RUTH E. GOLDSMITH ET VIR v. J. SYDNEY SALKEY.

No. 7338.  Decided January 19, 1938.
Rehearing overruled March 16, 1938.
(112 S. W., 2d Series, 165.)

*Henry A. Hirshberg* and *Carter & Lewis,* all of San Antonio, *Black, Graves & Stayton,* and *Ocie Speer,* all of Austin, for appellant.

Joan Salkey, being an inhabitant of Texas, residing in the home and at the domicile of her mother in the City of San Antonio, the District Court of Bexar County had jurisdiction in a habeas corpus proceeding to determine, in view of the changed conditions duly pleaded and considering the best interest of the child, what new arrangement, if any, should be made for her care and custody. Wilson v. Elliott, 96 Texas 472, 75 S. W. 368; Campbell v. Storer, 101 Texas 82, 104 S. W. 1047; Lanning v. Gregory, 100 Texas 310, 99 S. W. 542.

*Arthur J. Freund,* of St. Louis, Missouri, and *Johnson & Rogers,* of San Antonio, for appellee.

Mr. Judge Martin, of the Commission of Appeals, delivered the opinion for the Court.

This case is before us upon the following certificate:

"Appellant, Ruth E. Goldsmith, and appellee, J. Sydney Salkey, were married in St. Louis, Missouri, on June 18, 1924, and established the family domicile there. On February 26, 1926, a daughter, Joan, was born to the Salkeys, and, now eleven years old, still lives to be the subject of this litigation.

"On July 15, 1930, in a proper Circuit Court of the City of St. Louis, Missouri, where the parties still resided, appellant obtained a decree of divorce from appellee, with custody of the minor daughter for eleven months of the next year, and ten months of each ensuing year, until the further order of the court, the custody being awarded to appellee during the remainder of the time, as well as all Saturday afternoons, Sundays, and legal holidays. The parents were given the privilege of taking the child beyond the limits of the State of Missouri at such reasonable times as they might elect, until further orders of the Court.

"Both parents have since remarried, appellant, Mrs. Salkey, now being the wife of Nat Goldsmith, who has joined her in this litigation. The Goldsmiths reside and are permanently domiciled in San Antonio, Bexar County, Texas, and have resided there since their marriage, in October, 1932. In the meantime, about July 1, 1931, appellant, Mrs. Salkey, moved from St. Louis to Los Angeles, California, and resided there until she married Goldsmith and joined him in residence in San Antonio. Salkey still maintains his domicile in the State of Missouri.

"In August, 1934, at the instance of Salkey, upon petition filed in June, 1934, the St. Louis Circuit Court, in which the prior proceedings were still pending, made an order modifying the original decree so as to award the custody of the minor to Salkey from September 1st to June 15th in each year, and to appellant for the remaining two and one-half months in each year. Mrs. Salkey voluntarily appeared and participated in that proceeding. That order was affirmed by the St. Louis Court of Appeals (Salkey v. Salkey, 80 S. W. (2d) 735), and writ of certiorari was denied by the Supreme Court of Missouri. The Goldsmiths retained the custody of the child in their San Antonio home during that litigation, but in pursuance

of the modified order, when made final, they returned her to appellee in St. Louis. There she remained from September, 1935, to June, 1936, when Salkey returned her to the Goldsmiths in San Antonio, as required by the modified decree of the St. Louis Court.

"While the minor was in the custody of the Goldsmiths during the ensuing two and one-half months, under the Missouri decree, Mrs. Goldsmith had herself appointed by the probate court of Bexar County as guardian of the person and estate of her daughter, and she and her husband, on August 5, 1936, while her daughter was residing with her during said period fixed by the existing decree of the Missouri Court instituted a proceeding in District Court of Bexar County, seeking an order giving them general custody of the child, alleging material changes in conditions affecting its welfare since the rendition of the modified decree of the Missouri Court. Upon that pleading the district judge issued the writ of habeas corpus, as well as an injunction restraining Salkey from interfering with the existing custody of the child. These writs seem not to have been served upon Salkey. Citation was issued to Bexar County, only, for him in the main case, but was not served upon him, it being true, as alleged in appellant's petition, that he was at the time a resident of St. Louis. However, after the expiration of the time fixed in the Missouri decree for the return of the child to him (September 1st), Salkey came to Bexar County, and then filed in the same court an application for writ of habeas corpus for custody of the child and to enforce the terms of the Missouri decree. The two proceedings were consolidated. By a cross action in the consolidated case the Goldsmiths alleged that since rendition of the modified decree of the Missouri Court, in June, 1934, conditions affecting the welfare of the minor had changed in various material respects, and prayed that they be given custody of her in the future. The court below sustained Salkey's plea to the jurisdiction of said court, over the Goldsmith's cross action, upon the ground that the Missouri Court, in the exercise of an admittedly proper jurisdiction, having previously adjudicated the question of the custody of the minor, had continuing and exclusive jurisdiction thereover, and that for the Texas Court to undertake to adjudicate the question, even though under changed conditions affecting the welfare of the minor, would be to deny full faith and credit to the judgment of a court of competent jurisdiction of another State, in contravention of the full faith and credit clause of the Federal Constitution (Art. 4, Sec. 1). Upon sustaining Salkey's said plea to the jurisdiction, the

court below dismissed appellants' cross action for the custody of the minor, and ordered them to deliver the minor to appellee. The Goldsmiths appealed. This Court has ordered reversal of that judgment, and the cause is now pending on appellee's motion for rehearing.

"The record shows that under the laws of the State of Missouri, as construed by the courts of that State, when the jurisdiction of the Circuit Court of Missouri was invoked by the parties, and assumed by the Court, for the purpose of divorce and adjudication of the question of the custody of the child, that Court would have continuing (and, apparently by necessary implication, exclusive) jurisdiction to pass upon future questions arising as to the custody of the child until she would become sui juris, notwithstanding its removal, by its custodian, to the latter's new domicile in another State. In re Krauthoff, (Mo.) 177 S. W. 1112; In re Leete, (Mo.) 223 S. W. 968. (Both opinions are in evidence in this case, as the basis of the opinion of the sole witness upon this question.)

"The record also shows that this is not a suit to invoke only the police power of the State for the protection of the minor within its borders, but, on the contrary, one in which the question of the future custody of the child, for the time being, is to be adjudicated.

"In accordance with a provision of the decree of divorce, Salkey provided for the maintenance of the minor up to the time of the filing of this suit.

"The abstract question of whether the legal domicile of the minor, in the general sense, was or is in the State of Missouri, has not been determined by the majority, that question not being deemed necessary to this decision.

"The record shows that at the time of the institution of this proceeding the minor was lawfully in the custody of the Goldsmiths, in their San Antonio domicile, by reason of her delivery to them by appellee in pursuance of the decree of the Missouri Court.

"We conclude that in their cross action appellants alleged sufficient facts to authorize the court below, given jurisdiction, to give the custody of the minor to appellants, and this conclusion narrows this inquiry to the one question of whether by reason of appellants' domicile in Texas, and the minor's lawful, even if only temporary, residence with appellants in their domicile in said State, the courts of Texas acquired jurisdiction to adjudicate the question of the minor's custody, in view of such changed conditions, notwithstanding the original adjudication of the question of custody was properly made in

the Missouri Court. The merits of the controversy between the parties are not at all involved in this appeal, which concerns only the question of jurisdiction of the court below over that controversy.

"A majority of this Court have held that, under the facts stated, the lawful, even though temporary, residence of the minor in the permanent domicile of appellants in Bexar County, Texas, was sufficient to confer jurisdiction upon the district courts of that county upon appellants' suit to recover custody of the minor because of changed conditions materially affecting the minor's welfare, arising subsequent to the original adjudication of the question of custody by the Missouri courts.

"Associate Justice Murray dissents from that holding, contending that in view of the fact that under the law of the State of Missouri the Circuit Court of the City of St. Louis has continuing and exclusive jurisdiction to pass upon questions involving the future custody of the child, and in view of the fact that by the modified decree of August 6, 1934, Salkey was given general custody of the child, Joan, and required to pay $250.00 per month for her support and maintenance during the two and one-half months she was permitted to visit her mother in San Antonio, and in view of the further fact that Salkey has his permanent domicile in the City of St. Louis in the State of Missouri, and Joan had resided with him in that domicile from the time the modified decree became effective by the denial of a writ of certiorari by the Supreme Court of Missouri until she was brought to Texas for a visit with her mother, that by reason of all these facts the full faith and credit clause of the Federal Constitution would require that the Texas Court not take jurisdiction of the question of the proper permanent custody of Joan, and that therefore the judgment of the trial court should be affirmed.

"The point of dissent expressed by Justice Murray is upon a conclusion of law deemed material to the decision of this cause, within the contemplation of the provisions of Art. 1852, R. S. 1925, and, in accordance with those provisions, this Court, acting through its Chief Justice, does hereby respectfully submith for your decision said point of dissent through the following

"QUESTION:
"Under the facts, as above stated, was the legal though temporary residence of the child, Joan, in her mother's home and domicile in the City of San Antonio, Bexar County, Texas, at the time of the filing of the suit by the Goldsmiths, sufficient to give the District Court of that county jurisdiction to pass

upon the question of Joan's future custody, on alleged changed conditions arising since the rendition of the modified decree by the Missouri Court in August, 1934?

"In compliance with Rule 15 of the Supreme Court, this certificate is accompanied by the transcript of the record, and the briefs of the parties, together with certified copies of the majority and dissenting opinions, showing in detail the respective contentions of the parties, as well as the positions of the majority and minority, respectively."

1-4  This case is immediately ended, if we can agree with the minority view that the jurisdiction of the Missouri court respecting the subject matter of the present suit was a "continuing and exclusive" one. If we accept this hypothesis as correct, the conclusion that the Bexar County district court was without jurisdiction is too obvious to require discussion. The court decisions of this and other states, presently mentioned, leave us in no doubt that the assumption of such a premise is not justified by either logic or judicial precedent. It is no longer an open question in American jurisprudence that a child custody judgment is res adjudicata only of what was then before the court, and that far only is protected by the "full faith and credit" clause of the Federal Constitution. A subsequent material change of conditions brings into being a new and independent cause of action. The original custody judgment may be absolute and final in form. In reality, it is temporary and conditional. Whether expressed or not, the law writes into each of such judgments, in substance, that its finality ends when and if conditions affecting the welfare of the child have materially changed. So that it may be said that a petition alleging such facts is in no sense an attack upon such former judgment, but is an independent suit, having to do with a present status, and challenging the jurisdiction of a proper court to declare such status upon the basis of the then welfare of the child. That welfare is the concern of sovereignty, as the guardian of persons under disability, and in a very real sense the State is interested in the result, though not a nominal party. That concern does not end with a judgment, but is a continuing one until such child becomes sui juris.

5  Such a proceeding is not to be judged, nor the results measured, altogether by technical rules that have to do with property rights. If it were purely a personal contest between the mother and father over a legal right, there would exist a basis for holding that the jurisdiction of the original court granting a custody judgment was continuing and exclusive. It is not

such a proceeding, and the relative fitness of the two becomes a proper subject of inquiry only as such matter affects the welfare of the child, which in a proper case overrides the instincts of paternal love and justifies the court in giving the child's custody to a third party. Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937. The entire question being bound up with the right of sovereignty to protect and promote the welfare of both society and of the individual members thereof within its borders, the State properly reserves to itself the right to a judicial determination of the status of its inhabitants, when that status becomes a matter of concern to organized government. It follows necessarily that Texas will not yield to a foreign jurisdiction the exclusive right to determine the status of one of its residents, when the determination of that question is affected by the considerations mentioned. A foreign judgment which purports to retain jurisdiction to determine a future status not then in existence, or expressed otherwise, over a cause of action purely in future, is not protected by the "full faith and credit" clause of the Federal Constitution. That clause protects judgments of courts but not of judges. An attempt to retain the right to pass upon the merits of a mythical case not then in existence, and which will exist as an independent suit, when and if it comes into existence, is not a "judgment" as that term is legally defined. 33 C. J., p. 1047 et seq. The holding is almost universal, so far as our investigation discloses, that the courts either directly or by necessary implication repudiate the rule of "continuing and exclusive jurisdiction" in the court granting the original custody judgment. We briefly mention a few of these:

Wilson v. Elliott, 96 Texas 472, 75 S. W. 368, 97 Am. St. Rep. 928:

Judgment was entered in New Mexico awarding a child to the custody of its father with the provision "that the child should be permitted to visit its mother once a year for the period of one month during the month of July, that said visits shall be made within the Territory of New Mexico, and the said child shall not be removed from said Territory by her mother." The mother removed the child to Texas contrary to the order and instituted proceedings in Texas for its custody. This proceeding was allowed. The holding should have been, under appellee's contention, that the Texas courts had no jurisdiction since that in the New Mexico court was "exclusive and continuing." The precise question was not discussed, but since it related to jurisdiction, we regard the decision as impliedly overruling appellee's contention.

In re Lette, 205 Mo. App. 225, 223 S. W. 962:
In this case the Missouri court proceeded to hear the merits of a child custody suit, when it should have held that "continuing and exclusive jurisdiction" was with the court of Massachusetts where an original custody judgment had been rendered.

Of similar import are the cases of State v. Larson, 190 Minn. 489, 252 N. W. 329; Sheehy v. Sheehy, 88 N. H. 223, 186 Atl. 1, 107 A. L. R. 635; Ex parte Leu, 240 Mich. 240, 215 N. W. 384; Mylius v. Cargill, 19 N. M. 278, 142 Pac. 918, L. R. A. 1915B, 154, Ann. Cas. 1916B, 941.

Finally, we direct attention to numerous Texas cases holding pointedly or by necessary implication that a district court other than the one rendering the original custody judgment had jurisdiction to hear and determine the question of custody upon allegations of a material change in conditions since the original rendition. Black v. Black, 2 S. W. (2d) 331; Foster v. Foster, 230 S. W. 1064; Gazell v. Garcia, 187 S. W. 410 (writ refused); Pittman v. Byars, 51 Texas Civ. App. 83, 112 S. W. 102; Keith v. Keith, 286 S. W. 534.

The contention is pressed upon us that the general custody of the child in controversy had been given to its father by a Missouri court decree and that its domicile was in Missouri, and not in Texas. We regard the substance and effect of that decree as dividing the general custody of the child between its mother and father in the proportion of approximately 9½ months of the year to the father and the remainder of the year to its mother. She undoubtedly had the same custodial rights during the shorter as he had during the longer period of time. The question of time of the custody is not of controlling importance. If time alone controls where was its domicile in a case where the time was divided equally? Nor are we impressed with the view that the welfare of this child may be subordinated to or controlled by any technical definition of domicile, as applied in other character of cases. The out of state cases already cited are in point at least by analogy upon both questions. In Texas, Judge GAINES had before him in Campbell v. Storer, 101 Texas 82, 104 S. W. 1047, the question of the jurisdiction of the Texas courts over the custody of a child left in Texas with its aunt, by its father, a resident of New Mexico. Answering the question, Judge GAINES advisedly, we think, used the following language: "The child was in Texas and was temporarily resident here, and that in our opinion is sufficient to give the courts of Texas the power to determine the question of her rightful custody."

Justice CARDOZO uses language of stronger import:

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. Woodworth v. Spring, 4 Allen 321, 323; White v. White, 77 N. H. 26, 86 Atl. 353; Hanrahan v. Sears, 72 N. H. 71, 72, 54 Atl. 702; Re Hubbard, 82 N. Y. 90, 93. For this, the residence of the child suffices, though the domicile be elsewhere." Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937.

Cases which decide otherwise are in the main distinguishable in their facts from the present case and will not be discussed.

Here the child was rightfully in Texas in the custody of its mother, whose domicile was here. Her custody was legal. A cause of action existed according to the record before us, independently of that alleged in the Missouri court. It had to do with the welfare of a child, resident of our State at the time, and protected by our laws.

We answer the question propounded "Yes."

Opinion adopted by the Supreme Court January 19, 1938.

Rehearing overruled March 16, 1938.