## LACY v. HITZEMAN et al.

No. 14709.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 9, 1945.

See, also, 188 S.W.2d 711.

L. J. Wardlaw and A. L. Wardlaw, both of Fort Worth, for appellant.

Greines & Greines, of Fort Worth, and Jules F. Mayer, of Dallas, for appellee.

SPEER, Justice.

This is a habeas corpus proceeding instituted by Agnes Lacy Hitzeman, joined pro forma by her husband, against Wayne A. Lacy in a district court of Tarrant County, Tex., to procure custody of Shannon Lacy, a male child, approximately 13 years old.

Agnes Lacy Hitzeman will be referred to by us as relator and Wayne A. Lacy as respondent in the pending suit.

The relator and respondent were formerly husband and wife, they being married in Oklahoma in 1930. In 1932 the child, Shannon Lacy, was born to the union. The couple separated in 1933. Early in 1934 respondent, as plaintiff, instituted a suit for divorce in the district court of Osage County, Okl., and on April 2, 1934, the judgment for divorce was entered by the court. That judgment is not before us and insofar as we know no disposition was made by the court of the custody of the child. Both parties have since remarried and have had a child or children born to each of them by subsequent marriages.

Upon the petition of relator, who was defendant in the divorce proceedings, there was entered by the district court of Osage County, Okl., on February 26, 1945, an order "modifying" the original decree of divorcement of April 2, 1934. By the "modified" decree of February 26, 1945, after hearing evidence, the court decreed that relator in this action (Mrs. Agnes Lacy Hitzeman) have custody of the boy, Shannon Lacy, "for the months of June, July, and August, 1945, and from December 20th to December 30th, 1945, and for a like period of time each succeeding year." The modified decree was referred to and made a part of relator's petition for habeas corpus in this action.

Relator made further allegations to the effect that the respondent (Wayne Lacy) was illegally restraining the child of his freedom of movements, and prevented him from visiting with or communicating with his mother; and was endeavoring to poison the boy's mind against relator, his mother.

Relator prayed for notice to respondent directing him to have the child before the court at a time to be named by the court, to show cause why he should not be required to release the child from his illegal restraint and why relator should not be awarded the custody and control of said child for the months of June, July, and August, and from December 20 to December 30, 1945, and for a like period during each succeeding year thereafter, and for such other relief both in law and equity to which she may be justly entitled.

Respondent answered with several special exceptions and general denial of all relator's allegations contained in the third paragraph of her petition, which relate to the conduct of respondent concerning his illegally restraining the movements of the child and teaching him not to love his mother, weaning him from her affections and poisoning his mind with reference to her.

The writ was issued, hearing had before the court, and judgment entered, giving to relator the relief sought by her. From that order respondent has appealed. Respondent's appeal is predicated upon three points of error. They are failure of the court to sustain his first, second, and fifth special exceptions to relator's petition for habeas corpus. No. 1 excepted to the petition because same disclosed that the instant suit was based upon a judgment from a foreign state, and "said judgment has no extra territorial jurisdiction beyond the boundary of the State of Oklahoma." 2. "This court has no jurisdiction to give aid to a judgment of a foreign state." 5. "That the plaintiff has not alleged in her application for writ of habeas corpus that the original judgment referred to in said application, rendered by the district court of Osage County, Oklahoma, was and is a final judgment, and plaintiff has plead no facts showing said judgment so rendered on April 2, 1934, to be a final judgment."

■ In the view we take of a proper disposition of this appeal we have concluded that all said points of assigned error should be overruled. First special exception, upon which the first point is based, relates to the nature of the allegations of relator as to a judgment in cause No. D—5044, entered by the district court of Osage County on April 2, 1934, in which it is alleged that respondent here was plaintiff and relator was defendant and nothing more is said in the petition as to the nature of the suit nor as to its finality. The special exception pointed out that said judgment had no extra territorial jurisdiction beyond the boundary of the State of Oklahoma. As an abstract proposition, it may be said that the assertion is true insofar as that court had authority to enforce its decree in another state, and respondent's second special exception may be considered along with that of his first. Said second exception, as quoted above, asserts that this court (meaning the 96th District Court of Tarrant County) has no jurisdiction to give aid to a judgment of a foreign state. We think this exception without merit for the reason that courts of this state will take cognizance of and give

full faith and credit to judgments of other states in actions brought in this state thereon. U. S. Constitution, Art. 4, Sec. 1. It cannot, therefore, be said that courts of this state will give no aid to judgments rendered in another state. Third point assigns error because the court refused to sustain respondent's special exception No. 5 because the petition of relator did not allege that said judgment of April 2, 1934, was a final one. There was no specific allegation of the finality of the last mentioned judgment of the district court of Osage County, Okl. But the petition does allege that the same court on the application of relator entered a "modified" order on February 26, 1945, on its judgment of April 2, 1934. No complaint is made of the second order or decree modifying the first on account of the court's having lost jurisdiction of its first judgment for lack of its finality. There was an allegation in relator's petition that the modified order was final.

■ No testimony was offered upon the trial of this case as to the applicable law in Oklahoma, in the absence of which it would be presumed that the law in Oklahoma applicable to such cases is the same as in Texas. 26 Tex.Jur. 439, § 587.

The modified order or decree of date February 26, 1945, was entered in the same cause and under the same docket number as the original judgment entered April 2, 1934. Applying the rules of law in this state applicable to the two judgments entered by the Oklahoma Court, the second judgment which is termed a modified one was in fact a separate and distinct action under our procedure, brought about by a changed situation or condition which would authorize the court having jurisdiction to award custody of a child different to the award made in the first judgment or to award the custody, if as in the first Oklahoma judgment we may assume that no award of such custody was made. The "modified" judgment of February 26, 1945, was not, under our procedure, in response to a petition to set aside the old judgment and retry the original case, but was a new and independent action to determine custody of the child, and in no way involved a retrial of the original action in which judgment was entered April 2, 1934. Lakey v. McCarroll, 134 Tex. 191, 134 S.W. 2d 1016; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293. It will be observed that relator relied, at least in part, upon the validity of the judgment of February 26, 1945, by the Oklahoma court and this judgment was alleged to be final.

■ The alleged error of the trial court in overruling respondent's special exceptions based uopn the insufficiency of pleadings in connection with the judgments rendered by the Oklahoma court, as indicated by the above quoted points of error, becomes immaterial and presents no reversible error when the trial court, as he did in this case, determines the legal custody of the minor, and awards his custody between the natural parents by a decree independent of any previous judgments entered by a sister state. This is true even though the court in connection with his judgment did hold that the Oklahoma "modified" judgment should be upheld, but in the same judgment found under the pleadings and testimony offered by implied consent of the parties that the custody of the child should be divided between the parties in the same manner the Oklahoma court had decreed.

Under the record before us, if the trial court had sustained the special exceptions of respondent, which form the basis for his points of error, and no amendments had been made by relator under her allegations contained in paragraph 3 of her petition concerning the boy's illegal restraint and respondent's efforts to wean from relator the child's affections and to poison his mind concerning relator, coupled with the issues developed by the testimony by the implied consent of all parties, the court was authorized to determine the legal custody of the boy and to award his custody and care as he did.

■ The judgment entered by the Oklahoma court on February 26, 1945, properly authenticated, was introduced in evidence upon the trial of the instant case. By its recitations it appears that respondent entered his appearance upon the trial of said cause by employing counsel, who as the representative of respondent and at his instance appeared and agreed with opposing counsel to a continuance of the cause from a date set by the court to a subsequent date. That in obedience to that agreement of counsel, the case was continued to a subsequent date for trial, and that prior to the date on which the case was actually tried, respondent's counsel, at the request of respondent, withdrew from the case, and it was tried at a time

when respondent did not appear in person nor by attorney, although being duly advised of the date of said trial. The agreement to continue the case made by respondent's counsel, under the circumstances above detailed, was an appearance in said cause by respondent and he was thereafter bound by all orders, judgments, and decrees entered by the court in that case. 4 Tex. Jur. 628, § 12. We think from the testimony in the record respondent resided in Texas at the date of the judgment entered February 26, 1945, and it may likewise be safely inferred that the child was in the home of respondent in Texas at that time, and if respondent had not entered his appearance in the Oklahoma court for trial of the issues there, it may be doubted that that court would have had jurisdiction of the parties. In Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 169, 116 A.L.R. 1293, our Supreme Court held that the welfare and custody of a child living in Texas, or one left temporarily in this state by one having its custody, is not controlled by any technical definition of domicile as applied in other character cases; that Texas courts will exercise jurisdiction in such matters. Citing Campbell v. Storer, 101 Tex. 82, 104 S.W. 1047. We think this authority sufficient to warrant the trial court in the instant case to hear and determine the custody of the child involved in this controversy, under the issues presented by the pleadings and the nature of the testimony offered.

We observe that upon the trial of the instant case there was introduced much testimony pro and con bearing upon relator's allegations of respondent's conduct toward the boy in teaching him such things concerning his past life and the attitude of his mother toward him as to "wean" his affections from his mother and "poison" his mind concerning her. Both sides went extensively into the acts of relator in an effort to locate respondent and the child during the eleven years elapsing since the divorce was granted and the date of the institution of this proceeding. Also relator detailed how respondent procured the actual possession of the child from her prior to the date of the divorce decree. She claimed that she surrendered the then two year old child to respondent in the city of St. Louis for a temporary visit of three days in the home of respondent's relatives; that immediately upon getting possession of the child in this way he left the state of Missouri and went to Oklahoma, and that over the period of years she had written numerous letters to both respondent and the child, addressed to various points where she had information that he was living, and that some of said letters had not been returned but many had been returned marked by the postal authorities "Unclaimed;" that she had sent numerous packages of small gifts and remembrances to the boy to addresses where she felt assured respondent lived, and that these packages had been returned marked "Unclaimed;" she testified at length how she eventually located respondent in Fort Worth, Tex., and came immediately and called at his home to talk about the custody of the child, and upon his refusal to permit her to see the child she instituted this suit. On the other hand, respondent claimed that when he took possession and custody of the child in 1933 he did so by virtue of a written agreement signed by himself and relator that he should have the child. But upon cross-examination he repudiated his statement that he and relator had signed such agreement and in fact said he did not know if such a paper was ever signed. He also testified that he had lived in Osage County, Okl., at different post office addresses from the date of divorce proceedings in 1934 until September, 1944, when he moved to Fort Worth, Tex., and that he had had the child with him at all times. He admitted that he had received some letters from relator and that he had known of letters and packages coming from relator to the boy but had not seen them; that a card requesting a return receipt was received at his home in some of these instances and that he did not do anything about it. He said that he had told the child that his mother (the relator) ran away with another man and left him (the child) and respondent, that she had married another man who did not want him, and that he had made no effort to teach the child to love his mother but that he had taught him to respect her. Respondent further said that he is a Baptist minister and was now a student in the Theological Seminary at Fort Worth and earning sufficient funds to properly educate and maintain the boy and was giving him proper religious training.

■ We have related an abbreviated statement of the bitter controversy existing between these parties over the present

custody and welfare of the child. Many of the matters testified to could not be said to be strictly within the pleadings of relator. It is clear to our minds that the issues of custody of this boy between his natural father and mother respectively were tried out before the court without objection upon the part of respondent for lack of pleadings, and therefore such issues were submitted to the court by at least implied consent of the parties, and under such circumstances as to authorize the court to pass upon these issues the same as if they had been definitely raised by the pleadings. See Rule 67, Texas Rules of Civil Procedure.

■ The issues involved in this case and tried out before the court were properly raised in a habeas corpus proceeding. The writ of habeas corpus is one of our oldest and most frequently used means of determining the illegal restraint of one's person and was the proper procedure in the present case. See Keith v. Keith, Tex. Civ.App., 286 S.W. 534; Oldham v. Oldham, Tex.Civ.App., 135 S.W.2d 564, writ of error refused; 21 Tex.Jur. 473, § 50; 23 Tex.Jur. 710, § 17; 25 Amer.Jur. 202, § 78.

The judgment of the court from which this appeal was perfected indicates that the court acted upon the petition for habeas corpus as pleaded, as well also upon the implied issues tried before him. The judgment entered by the court, among other things, contains the following extracts:

"It is therefore ordered, adjudged and decreed by the court that the court has jurisdiction of this matter in all things and for all purposes upon the pleadings before it, and that the modification order entered in the Osage County District Court of the State of Oklahoma in cause No. D-5044, styled Wayne A. Lacy v. Agnes Lacy, rendered and entered on February 26, 1945, should be in all things upheld, and it is so ordered.

"It is further ordered by the court that the best interests and welfare of the child, Shannon Lacy, will be best served if said child spends at least part of each year with his mother, the plaintiff, Agnes Lacy Hitzeman; and it is therefore further ordered, adjudged and decreed by the court that the mother, Agnes Lacy Hitzeman, be and she is hereby awarded the legal care, custody and control of said minor male child, Shannon Lacy, from this date to September 1, 1945, and from December 20th to December 30th 1945, and thereafter from June 1st to September 1st and then from December 20th to December 30th of each succeeding year; provided that the plaintiff shall permit the child to return to his father on September 1, 1945, and thereafter, at the expiration of each visitation and control period in her."

It is obvious to us that the trial court after having heard the respective contentions of the parties found that under all the circumstances it was to the best interest of the child that his custody be awarded to respondent and relator, dividing the periods of said custody in such way as would not break the continuity of the boy's school work and yet be conducive to his association with his mother part time to enable him to renew that acquaintanceship with her that had been broken so long caused by the divergent views of respondent and relator with reference to his custody. The trial court indicated from the bench, as disclosed by the record, that he was thoroughly convinced that both relator and respondent were good people, equally competent to rear, maintain, and educate the boy, and that his welfare demanded that he be permitted to participate in the love and affections to be bestowed upon him by each of his natural parents.

■ When, as in this case, the custody of a minor child is the issue, courts will take into consideration the welfare and future life of the child and not be controlled simply by the earnest desires of parents or other relatives in arriving at a proper judgment to be entered. A trial court has a well recognized broad discretion in such matters, and we deem it unnecessary to cite authorities in support thereof, and when a trial court has exercised that discretion, without an abuse of it, and there are evidence and pleadings, written or fairly implied, upon which to base a judgment, we may not disturb it. It matters not if the reviewing court might have concluded differently from the expressed findings of the trial court, we could not, if we desired to do so, substitute our own judgment for that of the trial court.

Under the record before us, we hold that no reversible error was committed in overruling the special exceptions pointed out; that there is no contention by respondent that the court abused its discretion, and we find none. There was ample evidence to support the judgment rendered and it should be and is, therefore, affirmed.