## SUTTER et al. v. YUTZ et al.
### No. 4651.

Court of Civil Appeals of Texas. El Paso.
July 6, 1949.

Rehearing Denied July 20, 1949.

Palmer & Lemons, San Antonio, Alfred M. Scott, Austin, (on appeal only) for appellant Sally Sutter.

Manning, Berliner & Gaither, El Paso, for appellants Ben Sutter, Sr., and Ben Sutter, Jr.

Abner S. Lipscomb, El Paso, Ernest Guinn, County Attorney, El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal by Sally Sutter from the judgment of the District Court of El Paso County, 65th Judicial District, whereby Johnny Sutter, the infant son of the said Sally Sutter, was declared a dependent and neglected child; her parental rights revoked as to said child and the custody awarded to Dolores Fitz Simon, a representative of the El Paso County Child Welfare Department. Above is stated only the portion of the judgment assailed by this appeal. It may be necessary herein to refer to other portions thereof.

This case originated in the District Court of El Paso County, Texas, 41st Judicial District. On February 5, 1948, Dolores Fitz Simon filed a petition seeking to have Sylvia Sutter, aged two years, six months, and Johnny Sutter, aged eight months, declared dependent and neglected children. Their mother was alleged to be Sally Sutter and that her residence was unknown. The petition did not set forth the name of the father of either infant. The Judge of the 41st District Court set the case for hearing on February 7, 1948, and appointed Charles Windberg, Jr. to represent the interests of the minors. On February 7, 1948, the court entered its judgment declaring Sylvia and Johnny dependent children. The judgment awarded the temporary custody and control of the children to Miss Dolores Fitz Simon as supervisor of El Paso City-County Child Welfare Unit, until such time as it could be determined whether the father or mother of said children was able to resume responsibility for them.

As has been stated, Sally Sutter was not made a party to this proceeding. It is fair to assume that she was without notice thereof until after the judgment was entered. Ben Sutter, Jr., the father of Sylvia, was not a party to the proceeding and was not mentioned in the petition. It is a fair inference that Mrs. Yutz, the appellee herein, knew Mrs. Sutter's address and did not disclose it to Miss Dolores Fitz Simon, the complainant in the proceeding.

On the 2nd day of March, 1948, Sally Sutter filed in the case her application to set aside the judgment of the court. On the 26th day of March, 1948, Joseph E. Taylor and Elizabeth E. Yutz filed a petition of intervention in the case. This petition alleged that Mr. Taylor by virtue of an order of the court had the temporary custody of Sylvia and Mrs. Yutz of Johnny. They averred Mrs. Sutter failed to provide proper care for the children, and sought a termination of the parental rights of Mrs. Sutter, and further that Johnny be awarded to Mrs. Yutz and Sylvia to Mr. Taylor, or, failing in this, that the custody of the children be awarded to the Child Welfare Department. On November 18, 1948, Ben Sutter, Jr. and Ben Sutter, Sr. filed their petition of intervention in the cause. In substance this petition averred that Ben Sutter, Jr. was the

former husband of Sally Sutter; that they were divorced by a decree of the district court of McLennan County; that the decree awarded the custody of the minor children Ben Sutter III and Sylvia to Sally Sutter; further that Ben Sutter, Jr. was not the father of Johnny, but that he and his father were willing to accept the custody of Johnny. They sought revocation of the order declaring Sylvia and Johnny dependent children, alleged that Sally Sutter was not a proper person for the custody of the minor children, and sought in addition the custody of Ben III.

On December 1, 1948, the 41st District Court transferred the cause to the 65th District Court.

On December 3, 1948, Frank and Elizabeth Yutz filed an amended plea of intervention in the cause. In this intervention the setting aside of the order of the 41st court was opposed and there was set up the unfitness of Sally Sutter for the custody of the child Johnny, and sought revocation of the parental rights of Sally Sutter as to Johnny. Ben Sutter, Jr. filed a trial amendment and set up a changed condition since the awarding of the custody of Ben Sutter III and Sylvia Sutter to Sally Sutter by the divorce decree of the District Court of McLennan County.

The trial was to the court without a jury. The judgment declared Johnny a dependent and neglected child, terminated the parental rights of Sally Sutter and awarded his custody to a representative of the Child Welfare Department.

The judgment further purported to set aside the decree of the District Court of McLennan County awarding the custody of Ben III and Sylvia to Mrs. Sutter. This provision is of course entirely void, but the trial court had the power to award the custody of the minors if there has been a subsequent change in conditions. Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293.

By its decree the court adjudged Ben Sutter to be not guilty of contempt of the McLennan County District Court. It is elementary, of course, that this was beyond its power, but it is of no consequence here. The judgment awarded the custody of Ben III and Sylvia to Ben Sutter, Jr., their father. This portion of the judgment is not assailed by this appeal.

On demand of Sally Sutter the court made and filed findings of fact and conclusions of law. In substance it was found that Johnny was not the child of Ben Sutter, Jr., but was born in El Paso after the decree of divorce awarding Ben III and Sylvia to Sally Sutter; that Johnny's father paid some $15,000 to Sally Sutter for her seduction; that she received $11,000 thereof, the balance going to her attorneys; that Sally Sutter is not a good business woman; her net worth is less than $11,000; her mental and physical condition are found to be as stated by a witness "He considered her mentally sick." While the children were in her custody in El Paso her care of them could not be considered a proper care and custody. It was concluded she was not the proper person for the care and custody of any of the children.

The proper disposition of this appeal depends on the determination of whether or not the evidence was sufficient to justify the judgment of the court that Johnny Sutter was a dependent or neglected child, and the termination of the parental rights of his mother being a consequence thereof. Sally Sutter does not here assail the judgment of the trial court in awarding the other two children to their father, Ben Sutter, Jr.

Articles 2329 to 2338, Vernon's Ann. Texas Statutes authorize the proceedings undertaken here to have Sylvia and Johnny declared dependent or neglected children. Article 2330 defines a dependent or neglected child in substance as a child under sixteen years of age who is dependent upon the public for support or who is destitute, homeless or abandoned; or who has not proper care or guardianship, or whose home, by reason of neglect, cruelty or depravity on the part of the parents in whose care it may be is an unfit place for such child; Art. 2331 authorizes the institution of proceedings, provides the petition shall set forth the names of the parents of such child, if known; Art. 2332 provides for citation of parents and the fixing of a date for hearing; Art. 2336 for the dis-

position of the child by the judgment; Art. 2337 declares the effect of the judgment as terminating parental rights if the minor be declared dependent or neglected.

Beyond any question where the parents of a minor are not made parties to a proceeding to have such minor adjudged a dependent child, the parents are not bound by the decree unless in truth and in fact such minor was a dependent or neglected child. The parents not being parties may attack such decree and unless the facts are shown that justify its rendition same may be set aside and does not bar the right of such parent. De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687.

In the proceeding resulting in the judgment appealed from here appellant Sally Sutter seems to have been accorded a full hearing. This is true even though the judgment entered be unjustified by the evidence. The interested parties seem to have been there represented. It would seem from the record before us that the trial was practically de novo.

A parent not shown to be unfit, unless he or she has abandoned or voluntarily surrendered the custody of a child, is not to be deprived thereof unless it appears from a preponderance of the evidence that such parent is unfit for such custody. State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901; Legate v. Legate, 87 Tex. 248, 28 S.W. 281. Of course a parent is not legally bound by such an attempted surrender of custody.

It is a fair corollary of the foregoing proposition that a court should not declare as against the parent that a child is a dependent or neglected child unless the facts constituting it as such appear from the preponderanec of the evidence. Poss v. Anderson, Tex.Civ.App., 188 S.W.2d 726. If such facts appear the parent is unfit for the custody of the child; the termination of parental authority or rights of such parent as a result of such decree is justified.

Sally Sutter came to El Paso subsequent to July 6, 1946, to visit her sister. Ben III and Sylvia accompanied her. On the 3rd of June, 1947, Johnny Sutter was born. Before coming to El Paso she had collected the sum of $15,000 from Johnny's putative father, $4,000 of which she paid out as attorneys fees. With the $11,000 she purchased a small apartment house on Montana Street. Orndorff & Yutz were the agents through whom this property was purchased. Mrs. Yutz, the intervenor here, and who was awarded temporary custody of Johnny, was a member of said real estate firm. Through this business contact Mrs. Yutz became acquainted with Mrs. Sutter. Mrs. Sutter rented a portion of this apartment house and the other portion she and her children occupied. During a substantial portion of the time she was afflicted with herpes, commonly known as shingles. This is a disease resulting in an inflammation of the nerves. The disease is very painful. Some time in the latter part of 1947 Mrs. Sutter decided to move from El Paso and listed her property for sale with the real estate firm of Orndorff & Yutz. Through a sub-agent they succeeded in selling the property.

There is evidence that Mrs. Sutter was not a good housekeeper; that she permitted Sylvia and Johnny to be in disgusting conditions as to filth at times, although the evidence is wanting as to such conditions affecting the health of either child; that she would leave the house and fasten up the children therein, fastening the child Sylvia in bed in some sort of way. Mrs. Sutter is a woman of considerable education, with a talent for music. At the time of the trial she was a member of a choir of one of the large churches in San Antonio. Intervenor Mrs. Yutz, Seth Orndorff and Mr. Taylor, an employee of the firm of Orndorff & Yutz, were all witnesses as to the dirty condition of the house and as to the condition of the children. Mr. Taylor had the temporary possession of Sylvia and is a party to the suit.

Mrs. Sutter left El Paso some time in January, 1948, taking Ben III with her, leaving Sylvia with Mrs. Taylor, the wife of the employee of the firm of Orndorff & Yutz, and Johnny with Mrs. Yutz. Mrs. Sutter left El Paso rather hurriedly. On December 28, 1947, Mrs. Sutter went down town to do some shopping. She took Ben III with her and left Sylvia and Johnny at home. Sylvia was tied in her bed. While

she was shopping Ben III either ran away or became separated from her in some way. She went through the department store and then notified the police, but could not find him. She went home, and upon her arrival discovered Ben III there. He had been picked up by some nurse and was able to give his address, and she returned him to his home. Before her arrival and before the arrival of Ben in the custody of the nurse, Mr. Seth Orndorff and Mrs. Yutz came to the house. Their purpose was to see Mrs. Sutter in regard to the sale of the place. There was considerable stir and ado. Mr. Orndorff phoned the Sheriff's Department, the Police Department and the Child Welfare Department. He likewise phoned the Herald-Post, one of the leading newspapers of El Paso, and a reporter was sent out by that paper to investigate conditions.

It is fair to assume, we think, that her return was somewhat delayed on account of seeking to find Ben III. She further testified that when she went on the shopping trip she had made arrangements for another woman occupying one of the apartments to look in upon the children from time to time.

Mrs. Sutter sold her place and early in January left for Bentonville, Arkansas. She left rather hurriedly, taking Ben III with her. There is some evidence she feared that the Child Welfare Bureau would interfere with her custody of the children. Just prior to her going she entrusted Sylvia to Mr. Taylor and his wife and Johnny to Mrs. Yutz. Mrs. Sutter's version of the matter is that the two children were to remain, Johnny with Mrs. Yutz and Sylvia with Mrs. Taylor, until some time in March, when Mrs. Yutz would bring the children to her in Arkansas. Mrs. Yutz stated that she was to take charge of Johnny while Mrs. Sutter was packing; that Mrs. Sutter left without making any arrangements for the future care and custody of Johnny. At all relevant times Mrs. Yutz knew the address of Mrs. Sutter, and Mrs. Sutter communicated with her from time to time. As soon as Mrs. Sutter learned of the proceeding whereby Sylvia and Johnny had been declared dependent children she hastened to El Paso and filed motion in the cause, seeking to have the judgment set aside. During her absence Mrs. Yutz knew her whereabouts and failed to inform her of the proceedings to have the children declared dependent and neglected children.

Counsel for appellants have filed a vigorous brief herein. The findings of the trial judge on the evidence are vigorously assailed. The credibility of the witnesses against appellant is likewise vigorously assailed. The findings as to facts under evidence was for the trial judge. If such finding finds reasonable support in the evidence this court may not lawfully disturb same, even though on the evidence this court or some other court might have found differently as to the facts. If the trial judge was reasonably convinced from the evidence that Johnny was a dependent and neglected child it was his duty to so declare. This was his duty regardless of its effect on the welfare of the child's mother.

If there is any evidence that Mrs. Sutter intended to abandon the two children when she left El Paso same is of little weight. The unfitness of a parent for the custody of children may be inferred from their abandonment by such parents. De Witt v. Brooks, supra. However, the evidence as to abandonment is so slight that it did not of itself justify the finding of her unfitness and consequent termination of her parental rights.

A careful consideration of the findings of fact discloses that the reason the trial judge declared the children dependent and neglected children and terminated the parental rights of Sally Sutter was because she was not possessed of great business acumen; because she was mentally sick; because while the children were in El Paso her care could not be considered a proper care and attention to the children.

The finding that she was mentally sick was evidently based on the testimony of Seth Orndorff, a layman without special qualifications, so far as the record shows, to diagnose mental ailments, whether emotional or otherwise. He failed to give facts upon which his opinion was based. His opinion is not entitled to great weight. Her illness was not of such a nature as to prevent the witness from trans-

560

acting business of considerable importance with her. There is evidence that during part of the time she was suffering from shingles, part of the time she was with child. The evidence fails to show that shingles is incurable, or that she had not completely recovered at the time of the trial. Her divorce was followed by an unfortunate love affair. The unfortunate circumstances surrounding her and the vicissitudes of her life at this time would naturally result in emotional disturbance. This emotional disturbance was no doubt ministered to by the actions of the witness Orndorff and the appellee Mrs. Yutz on the 28th of December when after visiting her home they complained to the Police Department, the Sheriff's Department and the Child Welfare Department as to the Sutter children. They even went further and communicated with one of the leading papers of El Paso, and got them to send a reporter to the premises. In our opinion the evidence is not sufficient to justify depriving this mother of the custody of her minor son on the ground that she is mentally ill.

 Her business ability has small bearing on her fitness for custody of her child. Since her divorce she has supported these children. The father of Ben III and Sylvia, aside from the sum of $10.00, had paid nothing for their support until after this litigation was instituted, when he paid the sum of $240.00. The divorce decree provided he was to pay her for their support and maintenance the sum of $10.00 per month. Although for the space of about two years their father had paid nothing for the support of Ben III and Sylvia, their custody was awarded to him.

In regard to the finding that she failed to give the children the proper care and attention while they were in El Paso there was testimony that at times the children were in disgusting conditions as to their person. There is a lack of evidence that continued for long periods; there is no evidence that this lack of care as to their persons in any way affected their health. There is no evidence that she was able under the circumstances surrounding her at the time to give them any better attention.

She was the sole support of these three children. Her health at the time was bad.

Under the decree of the court the father of Ben III and Sylvia is now responsible for the support of Ben III and Sylvia. This was a responsibility which he practically failed to discharge from the date of the divorce to the date of the trial.

A parent has not a property right in a child. If a parent be unfit from misfortune or otherwise to discharge the duties and privileges conferred by parenthood, the state may intervene and terminate such rights. However, before this drastic remedy is applied, which is for the welfare of the child alone, the unfitness of the parent should clearly appear from the evidence. De Witt v. Brooks, supra; Cox v. Wicks, Tex.Civ.App., 210 S.W.2d 275; Fox v. Fox, Tex.Civ.App., 210 S.W.2d 622.

We have carefully read and considered the Statement of Facts in this case. In our opinion the evidence is not of sufficient weight to justify the termination of the parental right of the mother of this boy of tender years.

It is therefore ordered that the judgment of the trial court be reversed and the cause remanded for a new trial.