### WALKER v. WALKER.

No. 14813.

Court of Civil Appeals of Texas.

Dallas.

April 9, 1954.

Rehearing Denied May 7, 1954.

Earl R. Parker and Dee Brown Walker, Dallas, for appellant.

T. L. Hamilton, Dallas, for appellee.

PER CURIAM.

Appellant and appellee were divorced Nov. 10, 1949 and in the decree Susan, a daughter, was awarded to appellant, and the custody of Stephen, a son, was awarded to appellee. The present proceeding was filed by appellee to modify the November 10 decree by changing the custody of Susan from appellant father to appellee mother. Appellant answered and sought custody of both children. After a full hearing, the judgment here appealed from was rendered granting the mother's prayer, awarding her the custody of Susan, and ordering the custody of Stephen to remain with the mother. This appeal has been duly perfected from such order, the appellant father briefing three points in substance, error in changing the custody of Susan to the mother for the reason that the mother did not (1) plead, or (2) prove, a material change of conditions affecting the child which would authorize the order; and (3) error in not modifying the decree by changing the custody of Stephen because the preponderance of the evidence revealed that the mother was attempting to poison the mind, and prejudice the child against his father. Appellee answered by three counter-points in substance that the trial court did not err (1) in holding she had offered enough and proper pleading, and (2) sufficient evidence, to sustain the finding that the best interests of the children would be served by leaving the custody of Stephen with her and by changing the custody of Susan from the father to her; and (3) in refusing to change the custody of Stephen from her to appellant father. Both parties brief points 1 and 2, and counterpoints 1 and 2, together and we will so consider them. The rules applicable to change of child custody from that settled in a former decree between the same parties are well settled. The former decree is res adjudicata of the rights of the parties as of the date of its rendition; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, syl. 1, 116 A.L.R. 1293; Ex parte Eaton, 151 Tex. 581, 252 S.W.2d 557; unless, and only when, the actual conditions at such time have, since such prior judgment, changed to such extent that the welfare of the child, because of such materially changed conditions, requires such a change of custody. Ex parte Eaton, syl. 3, supra; Bezner v. Sawyer, Tex.Civ.App., 217 S.W.2d 858; Leonard v. Leonard, Tex.Civ.App., 218 S.W.2d 296; Son v. McConnell, Tex.Civ.App., 228 S.W.2d 290.

The record here shows a letter from appellant to appellee dated Oct. 7, 1949, just prior to the divorce decree of November 10, 1949. In that letter the father stated, material here: "Enclosed is a waiver of citation, copy of petition which I have filed, and settlement agreement. Please sign the waiver and the settlement agreement before a notary public and return the original waiver to me along with the original and one copy of the settlement agreement. It is my intention to continue with the arrangement which we now have and to allow Susan to stay with you. However, I want the official order to show that I have custody of her. Your first reaction to this will be that I could come out and pick her up with the court order, which, of course, I could and can do at this time if I want to. It is my intention to allow her to stay with you indefinitely if you show her the same consideration that you are showing Stephen. In this connection, you will have to trust my good intentions as well as I am having to trust yours at this time." He also suggested that appellee consult with her own lawyer about the matter.

The Juvenile Department of Dallas County made a complete investigation and report, which report, in part, material here, is as follows: "Parents' Agreement: A written agreement signed by both parties is filed with the court papers. This document sets forth the division of property and custody of the children. The custody of the children as per the agreement is as follows: (1) Ruthe Edwards Walker is to have custody of Stephen Craig Walker, with right to reasonable visitation by Dee Brown Walker and is to receive $100 per month for support of such child. (2) Dee Brown Walker is to have custody of Susan Hays Walker with the right of reasonable visitation by Ruthe Edwards Walker. This child is to remain in the possession of Ruthe Edwards Walker unless circumstances arise making it necessary to remove her from such possession. Recommendation: Your investigator feels after investigation of facts concerning the home and children that the agreement regarding custody of the minor children is intended for their best interest and welfare and therefore recommends that Stephen Craig Walker be placed in the care and custody of Ruthe Edwards Walker and Susan Hays Walker be placed in the custody of Dee Brown Walker."

The written agreement between the parties dated Oct. 7, 1949 and filed among the papers in the divorce proceeding, material here, was: "(1) Ruthe Edwards Walker is to have custody of Stephen Craig Walker, with the right to reasonable visitation by Dee Brown Walker, and is to receive $100.00 per month for support of such child. * * * (3) Dee Brown Walker is to have custody of Susan Hays Walker with the right of reasonable visitation by Ruthe Edwards Walker. * * * (6) Neither child shall be removed from Dallas County, Texas, by either party, except for short trips or vacations, without order of the District Court."

The present action was filed January 25, 1953 by appellee seeking to review the 1949 judgment and, on such review, to change the custody of Susan from appellant father to her, alleging in substance as grounds therefor that at the time she signed the agreement in the divorce case Susan had theretofore been stricken with polio; that her home had been wrecked by the filing of the divorce suit and she was in no condition to see the probable results of such award; that she was assured that if she would sign the agreement as it was written, she would have actual custody of Susan, the little girl, and that Susan would not be taken away from her as long as she treated Susan as well as she was treating or would treat Stephen. That she had custody of Susan for about two years after the judgment; that since the judgment there had been a change of conditions in that Susan was older and now respects her mother and expresses her desire to stay with her mother; that the present divided custody has all the disturbing effects inherent to such condition. She further alleged she has proven a good mother; that Stephen is obedient, well raised, polite and happy, except when Susan is taken away from him or he is upset by a change of homes, authority and discipline; that when the custody judgment was entered both children where babies; that both are now old enough to know they are brother and sister and want to be together and grow up as normal brother and sister; they are devoted to each other and cry when separated; that Susan is now old enough to be embarrassed when other children ask her why she does not live with her mother and brother; that she has purchased a new home with a nice yard for the children, in a good neighborhood; that Susan needs her mother's companionship and counsel as she grows up; that she now holds a responsible bank position and is a fit and proper person with a definite and good plan for caring for the children.

Appellant answered by exceptions, general denial and especially that Susan had fully recovered from polio on Nov. 10, 1949; denied that appellee mother was under a distressed condition of mind or under nervous strain at the time of the divorce; but that she was then represented by attorneys in the divorce case who advised her of her rights with reference to the children before and at the time the divorce and custody judgment was entered; and in a cross ac-

tion alleged that appellee was away from home, employed most of the time; that she was emotionally immature and incapable of using calm and collected judgment at times when the children needed attention; was addicted to temper tantrums and when in such tantrums attempts to tear her clothes from her body, and commits other acts not conducive to the emotional stability of the children; that she has attempted for several months to prejudice the children against him; told them he deserted them, etc.; that his present wife was responsible for breaking up their home; all of which is untrue; that she has an ungovernable temper, flies into fits and rages and is not responsible at such times; that the life and health of Stephen is impaired and endangered thereby; that appellee is therefore an unfit person to have the care and custody of either of the children. He further alleged that he has remarried, has an established home in a good neighborhood near churches and schools, where an adult person is present 24 hours a day; that the atmosphere is peaceful and quiet, where the children will be properly trained emotionally and from an educational standpoint. He also pled in the alternative that should the court find no material change in conditions and sustain the original judgment as to custody, that he has had difficulty in obtaining reasonable visitation with his children and the court should fix definite times for the children's visits with him, that Susan may remain acquainted with him and feel the security of his interest.

The evidence of the parties followed their material pleadings and, in our opinion, without repeating it in detail, was sufficient to support a judgment for either party. The Juvenile Department made a report to the court and after setting forth the nature of, and findings on, the investigation, made the following observations and recommendations, to wit: "Divided custody and week-end visiting by these children is causing confusion in two homes as well as in the minds of these children who have to meet conflicts in religion, different attitudes about medical attention, different methods of discipline, etc. Your investigator withholds recommendation in this Cause pending testimony of witnesses but does recommend to the court that regardless of who is given custody some fixed period of visitation be arranged by the court for the future interest of these children."

From the above record we have reached the conclusion that since the advantages of parental care by both parents jointly have been lost to the children, and such advantages cannot be adequately compensated for by any judgment the trial court could render, we can only look to the evidence and determine whether the trial court abused his discretion in rendering the judgment here appealed from.

Our examination of the evidence most favorable to the judgment sustains the trial court's implied finding as to changed conditions and that the best interests of the children will be served by awarding their custody to their mother. We therefore cannot say the trial court abused his discretion. Points 1 and 2 are overruled.

Point 3 asserts that the preponderance of the evidence reveals the mother was attempting to poison the mind of the child Stephen, and to prejudice him against his father. This was a question of fact under the evidence in this record, and we cannot say from such record that the trial judge abused his discretion in holding against appellant thereon. Point 3 is overruled.

For the reasons stated, the judgment of the court below must be

Affirmed.