Joseph J. BUKOVICH, Appellant,

v.

Sally A. BUKOVICH, Appellee.

No. 7457.

Court of Civil Appeals of Texas.

Amarillo.

April 26, 1965.

Rehearing Denied May 24, 1965.

Neal, Hazlewood & Wolfram, Amarillo, for appellant.

Clayton, Kolander, Moser & Templeton, Amarillo, for appellee.

CHAPMAN, Justice.

The subject matter of this suit involves an appeal by Joseph J. Bukovich from a judgment based upon a jury verdict in a case which originated by the issuance of a writ of habeas corpus against Sally Bukovich in the 108th District Court resulting in an instanter hearing in which said court issued temporary orders preserving the status quo until Sally Bukovich could secure counsel. The case was then transferred to the Court of Domestic Relations for trial.

The case involves the custody of Mark Bukovich, a four-year old child of a former marriage of the named parties.

The record shows the minor child was two years of age at the time the divorce was granted in the State of Indiana in June of 1962, and that his mother was awarded custody of him with provision that she could not leave the state.

Appellee testified in effect that her husband had employed detectives to follow her ever since she received custody of the child, that she had been brought into court on four different occasions on charges that were not true and that each time she received custody of the child. She did not appear in court at the time the custody was changed.

Appellee testified that she left the little town in Indiana where she lived and went over to Oak Lawn, Illinois, on December 3, 1963, after she heard the Indiana court had changed the custody of the child from her to its father, which would appear to be the fifth time he had sought to change custody. She acknowledged that she was scared. "I did not want them to pick up Mark."

The case was tried in the court below on the pleadings of appellee, Sally Bukovich, to the effect that circumstances, conditions,

and the financial position of Sally Bukovich since the second day of December 1963 have so substantially changed as to render her the fit, proper and suitable person with whom the custody of such child should be lodged for the welfare and benefit of such child.

Appellant's appeal is based upon points of no evidence and insufficient evidence to support the judgment based upon the jury's verdict that since the last Indiana decree there has occurred such a material change of conditions that the best interests of the minor child require a change of custody to its mother and that the court abused its discretion in refusing to grant application for writ of habeas corpus for the return of the child to its father.

█ We hold there is an abundance of evidence to support the jury verdict.

There is not any probative evidence that even tends to show a lack of good morals on the part of appellee, and her friends who testified in her behalf show from the record to be people with substantially responsible positions and wives of such type people.

At the time the custody judgment was awarded in favor of appellant the record shows appellee was only temporarily employed and was having difficulty finding enough work in the little village where she lived to sustain herself and the child and the court judgment awarding her custody had prohibited her from leaving the state to go where she testified she could have found positions that would have supported them.

For seven years before her marriage and up to the very day before her marriage she had worked as a bankteller in Oak Lawn, Illinois, just a few miles from the village where she lived in Indiana. She has learned since December 3, 1963, that such a position is available for her. She was corroborated in this testimony by Stanley C. Dawson, an owner of two appliance stores with his brother in Oak Lawn, Illinois, who is a former engineer in Detroit and presently a director of a bank in Oak Lawn, Illi-

nois. He testified he checked with the bank before he left Illinois to come to Texas to testify and that he learned appellee had been a very dependable employee and that a position was available for her that would pay from $280 to $310 per month. His father, Stanley H. Dawson, who is executive vice-president of a forging fabricating plant in Chicago, who has 220 people under his supervision, who is trained in mechanical and metallurgical engineering, who was former vice-president and general manager of the forging plant of the American Brake Shoe Company, former general manager of the Ford Motor Company Forging Plant, and former plant manager of Chrysler Forging Manufacturing Plant, testified he and his wife have a home in Oak Lawn, Illinois, and they would like for appellee to stay with them until she is financially able to rent an apartment for herself and Mark. He testified he had known her about twelve years and that she was an excellent mother. He is the father of Marilyn Carver, whose husband owns and operates Carver Pharmacy of Dimmitt, Texas. She and appellee were close friends for many years. Appellee stayed with her for a month after leaving Indiana. Mrs. Carver testified that Sally is as perfect a mother is she has ever been around.

Ruth E. Dawson, who has been married to Stanley H. Dawson for 38 years, testified that she loves Sally as her own daughter; that they have a three bedroom home in Oak Lawn, Illinois, with only one room being occupied and that she wants appellee to live with them until she gets settled; that they would be glad to have her indefinitely but that Sally would probably went to get an apartment after she gets settled in her position at the bank where her son is a director. She also testified that Mark "has been hounded and spied on. When they would hear a car come Mark was afraid he was going to be taken away from his mother. He would scream and cry sometimes, he was so frightened, a little four-year old boy." This record is completely void of any testimony of moral misbehavior on the part

of appellee. To the contrary, the testimony preponderates in her favor both as to morals and her ability as a mother. In her flight to avoid detection and the resulting loss of her child, which had been awarded to her in four custody hearings but was taken away from her on the fifth hearing, she assumed a fictitious name. Under the record of harassment to which her former husband had subjected her we believe she is not entitled to great criticism for such action. In any event, the jury heard all witnesses, including the father of the child, and found that since the former judgment entered on December 3, 1963, granting custody of the child to its father there has occurred such a material change of conditions that the best interests of said minor child require a change of custody to its mother. We do not believe one can study this record objectively and come to any other conclusion. The jury was instructed:

" * * * that not every change in conditions justifies the modification of a former decree awarding the custody of the minor child. Such changed conditions must be such as effect the welfare and best interest of the child and be of such nature that to leave the custody of the child as previously adjudicated would be injurious to the welfare of the child and requires that such custody be changed."

The father admitted in effect that he and the child were not acquainted and that if he should be awarded its custody he would go back to the motel and if necessary spend a week getting acquainted with him.

■ Where parents have already made a failure of their marriage the courts of this state in awarding custody must look to the best interests and welfare of the victims of such failure, the children. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787.

■ The jury has spoken in this case and appellant points to the effect that there is no evidence and insufficient evidence to support the court's judgment based upon such verdict and that the court abused its discretion in not granting appellant's application for writ of habeas corpus are without merit.

■ Appellant also urges error of the court in failing to grant full faith and credit to a valid decree in a sister state. Our Supreme Court settled that point to the contrary many years ago in Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293, when it held:

"It is no longer an open question in American jurisprudence that a child custody judgment is res judicata only of what was then before the court, and that far only is protected by the 'full faith and credit' clause of the Federal Constitution, article 4, § 1. A subsequent material change of conditions brings into being a new and independent cause of action. The original custody judgment may be absolute and final in form. In reality, it is temporary and conditional. Whether expressed or not, the law writes into each of such judgments, in substance, that its finality ends when and if conditions affecting the welfare of the child have materially changed. So that it may be said that a petition alleging such facts is in no sense an attack upon such former judgment, but is an independent suit, having to do with a present status * * *."

Our Supreme Court has more recently said, "petitioner invoked the jurisdiction of the Texas court by bringing the habeas corpus proceeding * * *. He cannot now be heard to complain of the taking of such jurisdiction." Short v. Short, 163 Tex. 287, 354 S.W.2d 933.

Accordingly, the judgment of the trial court is in all things affirmed.