**NELSON et al. v. CLIFTON, Sheriff.**

No. 2561.

Court of Civil Appeals of Texas. Eastland.
April 11, 1947.

Rehearing Denied May 23, 1947.

T. R. Odell, of Haskell, for appellants.

Fred Stockdale, of Fort Worth, for appellee.

LONG, Justice.

Mart Clifton, sheriff of Haskell County, filed a petition in the District Court of said County alleging that James and Jimmie Nelson, twin boys under the age of sixteen years, were dependent and neglected children. James L. Nelson and Inez Nelson, father and mother respectively of said children, answered said petition by general denial and leveled a number of exceptions thereto. A similar answer was filed by Hon. T. R. Odell, attorney for said children; trial was had before the court and jury. The jury in response to special issues found that James and Jimmie Nelson were not dependent children; that such children were neglected children but refused to recommend that their custody be taken from the parents and placed with some person or institution. Based upon the findings of the jury, the court rendered a judgment declaring such children to be neglected children and remanded them to

the custody of their parents and directed that they be permitted to remain in their own home under the care and control of their parents, subject to the jurisdiction and direction of the court.

Following the overruling of a motion for a new trial, the parents and children duly appealed to this court.

█ Appellants contend that the District Court was without jurisdiction to try the defendants under the Juvenile Delinquency Act, Vernon's Ann.Civ.St. art. 2329 et seq., for the reason that it is shown that each of said children was under nine years of age and for the reason the legislature repealed Article 2329, Rev.Civil Statutes, and that the District Court no longer has jurisdiction over dependent and neglected children. We cannot agree with this contention. The 48th Legislature did repeal Article 2329, however, when Article 2338—1 was passed establishing a Juvenile Court and defining its jurisdiction, the legislature provided in Section 24-A of said article that this Act should in nowise alter or affect existing laws with reference to dependent and neglected children, as that term was defined by Article 2330, Rev.Civil Statutes, and the District Court only should have original jurisdiction in all proceedings wherein it is sought to have a child adjudged to be a dependent and neglected child. This case was brought under Article 2330 and the court in submitting the case to the jury submitted the substance of such article in his charge. The petition alleged that the children were under sixteen years of age and that they were dependent and neglected children, therefore, we hold that the District Court did have jurisdiction of the case.

█ Appellant challenges the sufficiency of the evidence to support the findings of the jury that James and Jimmie Nelson were neglected children. The appellee alleged and the proof supported the allegation that James and Jimmie Nelson had broken into several houses and had depredated upon the private property of certain individuals in Haskell County. It was shown that they broke into the office of the Grain and Mill Elevator, East Side Baptist Church and the office of the Co-op Gin in Haskell, Texas. They did considerable damage to each of the places that they entered.

At the Grain and Mill Elevator office they removed some fountain pens and hid them under the building. They took the papers out of the file and scattered them over the floor. The receiver was cut off the desk telephone and thrown across the room from where the telephone was located.

At the Gin office they turned over the safe and hammered on the knob. The typewriters in the office had been beaten up and papers scattered on the floor, some of which had been burned. The father of the boys was not convinced that they had turned over the safe in the Gin office, and the sheriff in company with the father took James and Jimmie to the Gin office and they demonstrated that they could and did turn the safe over.

After the East Side Baptist Church had been broken into by James and Jimmie, it was discovered that it had been damaged to a great extent. Part of the damage done was denied by James and Jimmie but we are of the opinion that evidence was sufficient to justify the jury in believing that they did the damage to the church. We quote from the testimony of Reverend Priddy, pastor of the church, relative to the condition of the church after it was broken into:

"A. On the evening of March 26th Sheriff Clifton came down to my home, February 26th, came down to my home and asked me what had happened to the Church and I said, 'I don't know, why?' He said, 'Well, it's torn all to pieces.' I got in his car and we went down there and we walked on around the west side toward the west door at the back; a lot of window lights were broken out and I could hear something roaring inside and we went on to the west door and the glass in the west door had been broken out, and I stepped up in the door and I saw pamphlets, the Sunday School literature, scattered all over the floor; the baptistery was full of furniture; part of the ceiling was pulled down; the gas was flowing and the light bulbs had been broken; the piano was over

in the—had been pulled around and turned over, was laying flat of its back, one leg had been broken off; the top front and the bottom front of the piano had been torn off and some of the black keys had been broken off; some of the white keys had been set afire; the gas cocks had all been broken off, or the handles had been broken off, except one. The light bulbs were all broken out except one, and that was the one out on the front porch; some holes had been punched in the side of the entry room to the porch, in the sheet rock; the Honor Roll on which we had the names of our boys who had gone to war was—the glass was broken out and the paper on which the names had been written was torn up. The pictures in the little folks room were torn down and the glasses were broken up in small bits; some pictures of the boys that had gone to Service that the young people had in their class in frames had been torn out and we found them partially torn up. The baptistery had been filled with the piano stool, the pulpit, two stoves, three tables and some song books. The broom was in the throat of the air conditioner along with a roller for a rolling door or folding door which we had down there; thirty-four 9 X 12 window lights were broken out. I believe that is about all."

It is further shown that James and Jimmie, while playing in the Willow Creek Cemetery, turned over five tomb stones and broke the ornaments on some of the graves in the cemetery.

It was admitted by counsel for the appellee that Mr. and Mrs. Nelson, the father and mother of the children, bore a good reputation for being peaceable and law abiding citizens. A large number of witnesses who had known them for many years also testified to this fact. After a most careful consideration of the Statement of Facts, we have reached the conclusion that the jury was justified in finding that James and Jimmie were neglected children. Although the parents of the children were shown to have a good reputation, the jury could easily believe that James and Jimmie did not have proper parental control.

"The child is not found guilty of delinquency as though guilty of a crime. A finding of delinquency usually demonstrates the necessity for making a change in the custody of the child. The parent or former custodian may be a worthy person, but the child's delinquency indicates that it is not being properly reared—perhaps cannot be readily controlled. Under such circumstances the child's best interests demand that he be subjected to wiser or stronger authority." Juvenile Court of Shelby County, et al. v. State ex rel. Humphrey, 139 Tenn. 549, 201 S.W. 771, 773.

The children involved herein had been guilty of so many acts of misconduct that the jury in all probability believed that it would be to their best interest that they be placed under the direction and control of the court. In view of the fact that Mr. and Mrs. Nelson were shown to be good people, the jury came to the conclusion that it would not be to the best interest of the children to remove them from their own home and from the care and custody of their parents. However, the jury no doubt felt that the parents of the children needed the help of the court in controlling and properly managing the said children. The eminent trial court agreed with the findings of the jury and entered his judgment in keeping therewith.

Whether a child is a neglected child under the law is a fact question. 43 C.J.S., Infants, § 98, page 230. The court having submitted such question to the jury under appropriate instructions and the jury having found that the children were neglected children, such finding being supported by ample evidence, is binding upon this court.

By other points, appellants contend that the pleadings are insufficient. In a proceeding such as this, a pleading which alleges sufficient facts to confer jurisdiction on the court and that the welfare of the child requires that an order be made with regard to its custody is sufficient, 43 C.J.S., Infants, § 8, p. 59. We believe that the position taken by the appellants with reference to the pleadings is not tenable and this point is overruled.

474

James and Jimmie, while in the custody of the sheriff, admitted that they had entered the houses as charged in the petition filed by appellee. The sheriff testified to such admissions. Appellants objected to the testimony on the grounds that James and Jimmie were at that time under arrest.

It is well settled that such testimony is not admissible in a criminal case, further, such testimony is not admissible in any case where the person against whom it is offered could at that time or thereafter be charged with a criminal offense growing out of the transaction involved. However, in this case, the children being under nine years of age could not be convicted of any offense. Article 30, Penal Code. We are of the opinion that the court did not err in the admission of the testimony.

We have given this record our most careful consideration and are of the opinion that no reversible error is shown.

Judgment of the trial court affirmed.