**MITCHELL v. DAVIS et al.**

No. 13859.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1947.

Rehearing Denied Nov. 14, 1947.

Louis Wilson, of Dallas, for appellant.

Will R. Wilson, Dist. Atty., and Chas. E. Long, Jr., Asst. Dist. Atty., both of Dallas, for appellees.

YOUNG, Justice.

The suit involves appellant minor under Art. 2330 et seq., Vernon's Ann.Civ.St. (laws relating to dependent and neglected children), and, upon jury answer to special issue, the court found appellant to be a neglected child, awarding custody to Sam Davis, Chief Juvenile Officer of Dallas County, in order that said child, age twelve, "may receive proper medical care, education and maintenance * * * subject to the further orders of this court." Upon application, the judgment was superseded and appeal prosecuted by the minor through next friend.

Pertinent allegations of appellees' petition were "that the father, William Aaron Mitchell, is deceased; that the mother, Mittie Lee Mitchell, neglects the child and refuses to provide medical treatment for him when he is seriously ill; that the child has been ill since Fall, 1946 and his life is now in danger." The issue, answered affirma-tively, was: "Do you find from a preponderance of the evidence that the minor child, Leroy Mitchell, is a neglected child as that term is herein defined to you?"; the following instruction being given in such connection: "The term 'dependent or neglected child' as used in this charge, means a child who has not proper parental care or guardianship. The term 'proper parental care or guardianship' as used in this charge, means such care as an ordinarily prudent parent would exercise over the child for its physical welfare, under the same or similar circumstances."

Points of appeal, thirteen in all, complain in substance of (1) insufficient pleading to state any offense under above statute and a like insufficiency of evidence to warrant any change of custody; (2) error of court in failing to proceed under Art. 2338 —1 (Juvenile Delinquency Act) instead of Art. 2330 et seq., as stated; (3) further error in defining the phrase "dependent or neglected" in the disjunctive; (4) challenging, in effect, authority of the juvenile officers to maintain the instant proceedings in view of specified laws, both State and Federal; (5) appellant's right of religious worship was thereby infringed.

It may first be pointed out that the action alleged by appellee is predicated upon dependency or neglect articles of the statute, to which the Child Delinquency Act (Art. 2338—1) has no application; distinction between the two procedures having been heretofore clearly demonstrated by the courts. See Oldfield v. Lester, 144 Tex. 112, 188 S.W.2d 982; Nelson v. Clifton, Tex.Civ. App., 202 S.W.2d 471, 473.

The words "dependent or neglected child," under Art. 2330, include "any child under sixteen years of age * * * who has not proper parental care or guardianship * * *"; appellant through several points arguing that a failure on part of the mother to provide him with medical treatment when seriously ill, was insufficient to raise the issue of improper parental care within meaning of the statute. Contrary to the contention made, appellees' petition is seen to disclose a statutory cause of action. Medicines, medical treatment and attention, are in a like category with food,

clothing, lodging and education as necessaries from parent to child, for which the former is held legally responsible. 23 Tex. Jur. 719; and proof that the parent is failing to provide any of these legal necessities to minor constituents of the family would, in our opinion, sustain a charge of parental neglect. "It is the right and duty of parents under the law of nature as well as the common law and the statutes of many states to protect their children, to care for them in sickness and in health, and to do whatever may be necessary for their care, maintenance, and preservation, including medical attendance, if necessary. An omission to do this is a public wrong which the state, under its police powers, may prevent." 39 Am.Jur., sec. 46, p. 669.

█ In the court's charge the words "dependent or neglected child" were properly given their statutory meaning, the term "proper parental care or guardianship" being in turn correctly defined. 39 Am.Jur. 780. Also properly left for determination by the jury was the fact question of neglect relative to appellant. "Whether a child is a neglected child under the law is a fact question. 43, C.J.S., Infants, § 98, page 230. The court having submitted such question to the jury under appropriate instructions and the jury having found that the children were neglected children, such finding being supported by ample evidence, is binding upon this court." Nelson v. Clifton, supra. Likewise we must overrule the several points charging that appellees' petition is insufficient even under Art. 2330. These allegations, though short, were to the effect that the parent was failing and refusing to provide medical treatment for the child in its serious and continuing illness. "The Commission of Appeals has held that pleadings are of little importance in a child custody hearing and that the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of the children should be unhampered by narrow technical rules. Williams v. Perry, Tex.Com.App., 58 S.W.2d 31; Tunnell v. Reeves, Tex.Com.App., 35 S.W. 2d 707." Sawyer v. Bezner, Tex.Civ.App., 204 S.W.2d 19, 21. "Any pleading which shows upon its face that the welfare of a minor child requires that an order be made in regard to his custody is sufficient." Kell v. Texas Children's Home & Aid Soc., Tex. Civ.App., 191 S.W.2d 900; see also Nelson v. Clifton, supra.

█ But appellant further contends that any charge of parental neglect is refuted by the overwhelming weight of the testimony, and the fact record is extensively appealed to in support. Of course, in passing upon sufficiency of evidence to sustain a jury verdict, an appellate court must view all evidence in a light most favorable to the findings made. There was evidence that Leroy was a normally alert and energetic boy before August 1946, when he grew ill, progressively becoming worse; right knee swelling, face pale, moving about with difficulty and using crutches. During first six weeks of fall term, he attended school about one-half the time; second six weeks, about one-sixth time and last six weeks, not at all. Prior to suit he was observed to move about with much pain; appearance in courtroom contrasting greatly with that previous to illness, according to Mrs. Albrech, school nurse. She stated that he had lost considerable weight, was thinner, paler, eyes red-rimmed, knee greatly swollen, as was ankle; not appearing alert, energetic or interested. Such was the report of this witness from several visits up to December 1946. Dr. Bumpass, family physician, was called to the Mitchell home on February 3d (after filing of suit); testifying that Leroy was probably suffering from arthritis or complications following rheumatic fever; no positive diagnosis being obtainable without complete clinical tests and medical observation; the mother being then advised to secure the services of an orthopedist. Mrs. Mitchell refused to further consult a regular physician, though frequently urged to do so, continuing to rely on home remedies and prayer. During the trial she refused to permit a commitment of the boy to a hospital where he could receive diagnosis and treatment by the family physician free of charge. Prior to trial, the mother took appellant to a chiropractor and an osteopath who were unable to positively diagnose his condition (except that X-rays indicated a calcium deficiency), and who failed to recommend or suggest a cure or course of treatment. In this connection,

an excerpt from the testimony of Mrs. Albrech, school nurse who called at the home on November 26, 1946, is somewhat revealing: "Q. Did you have any further conversation with Mrs. Mitchell at that time with reference to medical treatment? A. Yes, sir. I asked her if she had consulted a doctor on this particular case and she said she hadn't and furthermore she didn't think it was necessary so long as she was praying for him, that this condition had persisted since school opened. She told me it started last summer before school started and at times it was far worse and I should have seen him sometimes when he was in far worse condition than that; that sometimes he couldn't get out of bed and they prayed and when she and the child prayed he had strength to get up and go and sometimes he would be out playing and come in crying, in the mother's words, 'with tears streaming down his face,' and asking her to pray and do something for him and at one time she was sewing at the sewing machine and he sank to the floor and begged her to do something and she got down on her knees by the side of the child and prayed."

Mrs. Mitchell, mother, on the other hand stoutly denied any charge of child neglect, it being evident that her rejection of orthodox medical treatment and adherence to home remedies and prayer, was because of religious belief in the fact of Divine Healing and her absolute faith in the power of religion to overcome all physical ailments and disease.

The legal point of interference with the freedom of religious worship is thus raised. Says the United States Supreme Court, in Reynolds v. United States, 98 U. S. 145, 25 L.Ed. 244: "Laws are made for the government of actions, and while they cannot interfere with mere religious beliefs and opinions, they may with practices." It is well settled that "Opposition to medical treatment because of religious belief does not constitute a defense to a prosecution for breach of a statutory duty to furnish a child with such treatment. Conscientious obedience to what the individual may consider a higher power or authority must yield to the law of the land where duties of this character are involved, and since a wicked intent is not an essential element of the crime, peculiarities of belief as to the proper form of treatment, however honestly entertained, are not necessarily a lawful excuse." 39 Am.Jur. sec. 115, p. 781.

The case narrows, therefore, to the fact question of neglect, answered by the jury adversely to appellant's claim and the evidence offered in support. We have given due consideration to the argument made of the mother's natural and constitutional right to appellant's care and custody. While a considerable amount of discretion is vested in a parent charged with the duty of maintaining and bringing up her children, the right of appellant and his mother here to live their own lives in their own way is not absolute. "While ordinarily the natural parents are entitled to the custody and care of their child, this is not an absolute unconditional right. The State has such an interest in the welfare of its citizens as will authorize the enactment of suitable legislation by which the State may assume the custody of children and the parents may be deprived of the custody thereof where the parents abandon the children or neglect them in such manner as to cause them to become a public charge, or where the parents otherwise prove to be unsuitable." (Citing authorities.) Dewitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 690.

Onerous as this order of custody may appear to the parties herein complaining, its entry was solely in the interest of appellant. It is not irrevocable, yielding always to changed conditions. The medical treatment outlined and recommended by the mother's own physician, followed by a reasonable cooperation on her part with juvenile authorities in the matter of appellant's physical welfare, will doubtless conclude this unhappy incident and result in his restoration to the usual routine of family life. But as the record now stands, the order of custody must be affirmed.