**REYNA et al. v. STATE.**

No. 9660.

Court of Civil Appeals of Texas. Austin.

Oct. 29, 1947.

Rehearing Denied Nov. 19, 1947.

Nic Doran, of San Antonio, for appellants.

William N. Hensley, Cr. Dist. Atty., Bexar County, and Austin F. Anderson, Asst. Cr. Dist. Atty., Bexar County, both of San Antonio, for appellee.

McCLENDON, Chief Justice.

Appeal from an order or judgment of the County Court of Bexar County, sitting as a juvenile court, overruling what is styled "First Original Petition to Modify or Revoke Order of Commitment of Juvenile," in a proceeding, brought under Art. 2338—1, Vernon's Ann.Civ.St., in which Elvira A. Reyna, a girl 17 years old, daughter of Matias and Eliza Reyna, was adjudged a delinquent child, and committed to the "care, custody and control of the Convent of the Good Shepherd in San Antonio." The petition was filed on behalf of Elvira, by her parents as next friends, and is sworn to by both parents. It was overruled upon its presentation, without hearing or evidence other than the reading from the evidence on the original trial that the mother was present at that trial. The appeal is predicated upon three points of error urging that the case be reversed because: (1) the parents did not have sufficient notice of the proceeding; (2) the complaint was not sustained by the evidence; and (3) "the child was deprived of the right to complain of the injury done to her person and reputation by others."

The suit was filed February 4, 1947, the petition alleging three grounds of delinquency: That Elvira (1) "habitually so deports herself as to injure and endanger the morals and health of herself and others"; (2) "habitually associates with vicious and immoral persons"; (3) "habitually loiters on the streets late at night and is not subject to the management and control of the person having her in cusody."

The summons to the parents was in the form of a subpoena commanding them to appear on February 6, 1947, "then and there to testify as a witness in behalf of the State, in an action in which Elvira Reyna is charged with being a 'delinquent child'." It was issued February 4, 1947, and placed in the hands of the sheriff the same day, whose return showed merely: "Executed by leaving a copy of the subpoena with the following witnesses: Matias Reyna Eliza Reyna." No date of service was given, but it was returned and filed February 5, 1947, the day preceding the trial and judgment; which latter recited no character of service.

The "Petition to Modify or Revoke" was verified February 23, and filed February 27 during the same term of court at which the judgment was rendered. Its verified allegations were that: Elvira was the elder of two children residing from birth in the "family home" of the parents, attending school regularly, where but for the incident stated below she would have graduated from high school in 1947. About January 22, 1947, she absented herself from home and her parents being unable to find her, reported her absence to the police. January 25, she came home, accompanied by an officer, and informed her mother "that she had gone to the police because she feared her parents would punish her for having absented herself from her home without permission, and for what she had done during her absence. * * * She informed her mother that she had been induced to leave home by a young man named Jesse J. Trevino and go with him in reliance upon his promise to marry her, and after said promised marriage they would tell their parents that they were married and so, their parents could not prevent them from marrying, (would) forgive her for marrying without their consent and they would all be happy." Jesse thereafter refused to marry her and abandoned her, and she went to the police to be taken home, as stated. She and her mother later went to the courthouse to file a complaint against Jesse "for the wrong done said child," and appeared before the Juvenile Officer in the belief that he was the one to whom to make the complaint. The mother speaks Spanish and very little English, and did not know that Elvira was being charged with delinquency, and the summons served on her was not sufficient notice thereof. The father had no notice and was ignorant of the proceedings. The parents "were at all times able, willing and ready, and are now * * * to provide a good and suitable home and family invironments for said child, and to in every respect comply fully with their obligation to safeguard said child's physical and moral health and best interest, and firmly believe it will be to said child's best interest to be returned to their custody." The prayer was to revoke the judgment or so modify it as to give the parents custody of Elvira.

It was stipulated that the only evidence upon the February 6, 1947, trial was to the effect that: January 30, 1947, Elvira was brought to the probation office by her mother, who complained that Elvira had run away from home eight days before and had been living with Jesse. This Elvira admitted and that they had had sexual intercourse many times in this period. She went back to her mother's home after reporting to the police herself that she had been a runaway and asked for their protection. The mother was present at the trial but did not testify, "and it is admitted that she does not speak nor understand the English language and Elvira was not represented by an attorney at the trial."

The State contends that the judgment of delinquency is valid and immune to "collateral attack", since there was no motion for new trial nor appeal taken within five days as provided by Sec. 21 of Art. 2338—1; and that modification of the judgment of commitment to the custody of the Convent is a matter purely within the discretion of the trial court and not subject to review.

■ This was in no sense a collateral attack on the judgment. It was a direct attack brought in the court in which the judgment was rendered to "revoke or modify" the judgment. Moreover, being filed and heard at the same term of court at which the judgment was rendered, it may be regarded either as a motion for new trial (the court having jurisdiction over the judgment during the term), or as an independent proceeding to set the judgment aside. Here the nomenclature is not of substantial importance. These principles are elementary.

■ Sec. 8 provides (Emphasis added): "Unless the parties hereinafter named shall voluntarily appear, the court shall issue a summons *reciting briefly the substance of the petition, and requiring the person or persons who have the custody or control of the child to appear personally and bring the child before the court at a time and place stated.*" The petition specifically stated that Elvira lived with her parents (naming them) and gave their street address in San Antonio. The process served upon the mother was in no proper sense

the "summons" provided for in Sec. 8. It was headed "Subpoena" and commanded the parents to appear "as witnesses for the State." There was no recitation briefly or otherwise of the "substance of the petition"; its only recitation in this regard was that they were "to testify as witnesses in behalf of the State, in an action wherein Elvira Reyna is charged with being a 'delinquent child'." Even as a statutory "summons" it was insufficient against direct attack in not giving the substance of the petition. The recent case of Robinson v. State, Tex.Civ.App., 204 S.W.2d 981, holds the petition insufficient where it does not reasonably set forth the grounds of delinquency, and by parity of reasoning a summons defective in that respect would be insufficient.

But, contends the State, the mother voluntarily appeared and rendered the summons unnecessary. The record does not show voluntary appearance by the mother. She appeared in obedience to a subpoena as a witness for the State. The stipulation recites that she was present at the trial, but did not testify. As she did not speak or understand English, it is evident that she was not aware of the significance of what was going on, or of what her rights as mother and one of the custodians of her daughter, or those of her daughter, were. Moreover the father "had no notice of any proceedings instituted against said child." Such was his verified statement, which stands unchallenged in the record. But even if he were served with the subpoena it did not meet the requirements of the statutory summons.

If we turn to the stipulations we find that no evidence whatever was presented at the trial upon any of the three specifications charging delinquency. The only evidence upon that issue was that of the single instance of the girl's running away from home and living a few days with Jesse, which was not specified in the petition. No evidence whatever of the girl's prior life, her character, habits, or associations. This single act stands in the record of the trial, entirely isolated. In determining whether it was sufficient to warrant a judgment of delinquency, it was highly pertinent to have a reasonably accurate

picture of the setting and attendant circumstances—whether, in fact, an innocent girl was the victim of a designing seducer, to whose persuasions she yielded under a promise of marriage (as she told her mother), or otherwise. Nor was there any evidence from which to determine that it was not for the best interest of the child that she be placed on probation or supervision in her own home, as provided in the first subdivision in Sec. 13.

■ This is an adversary proceeding in which the State is plaintiff and the child defendant. The latter's custodians (in this instance the parents) are the real representatives of the child and of its interests as well as of their own. They are required to be served with a summons which shall convey reasonable notice of the alleged grounds of delinquency. They, more than any one else except the child, are interested in its future welfare. Certainly a fair and reasonable opportunity should be given them to develop the facts which bear upon the vital issues of the case. Sec. 2 provides: "This Act shall be liberally construed to accomplish the purpose herein sought." Sec. 1 provides: "The purpose of this Act is to secure for each child under its jurisdiction such care, guidance and control, *preferably in his own home,* as will serve the child's welfare and the best interest of the state." (Emphasis added.)

From what has been said we conclude that the case should have been reopened upon both issues; that of delinquency vel non and proper custody.

The trial court's judgment is reversed and the cause remanded for a new trial on all issues. Costs of appeal are assessed against the State.

Reversed and Remanded.

### On Appellee's Motion for Rehearing.

The motion contains eight specifications of error, the substance of which is embodied in the following paragraph: In the first place, the relief granted should not be other than that prayed for (assertedly only to change the custody to the parents and not to set aside the judgment of delinquency). In the second place the appellate court should indulge every reasonable presumption in favor of the action of the trial court.

As to the first: the petition clearly sought a reopening of the case both on the issue of delinquency and proper custody. Its opening paragraph requested the court to reopen the case for the reasons that followed. These, the substance of which is set out in full in our original opinion, set up grounds: (1) for setting the judgment aside; (2) showing the child was not a delinquent; and (3) showing that the parents were the proper custodians. The prayer specifically asked that the cause be reopened, "and after hearing the order committing said child be revoked or modified and that the petitioners have judgment and order that said child be given to the custody of petitioners, and for any other relief that the court may deem right and proper." It would be not only an extremely strained and technical construction of the petition, but one wholly unwarranted, to give it the interpretation that petitioners were seeking only the change of custody from the convent to the parents, and not also to have the delinquency judgment set aside. The trial court's order overruling the petition refers to it only as one to "reopen the cause."

■ The general rule announced in the second ground is of course correct. We did "indulge every reasonable presumption in favor of the action of the trial court." The right of appeal means the right to have the action of the trial court reviewed upon the record thereof certified to the appellate court; and imports the corresponding duty upon the appellate court to accord such review, fairly and impartially, in the light of such record, and such record only. The motion states: "It is unfortunate that the agreed statement of facts filed in this case does not contain a full and complete statement of the testimony as brought out at both hearings regarding the history of the delinquency of this child over a period of several years prior to February 6, 1947, but it is believed that the instrument, denominated the agreed statement of facts, sufficiently discloses that the trial court gave consideration to the case history on file in the office of the Probation Officer of Bexar County to require the Appellate Court, un-

der the rule that if there is any evidence of probative force to support the findings of the trial court, to leave the same undisturbed, or to require a supplemental finding of fact or an agreed statement of facts to include all facts considered in the case by the trial court. Such facts would show, regardless of the sworn petition of Appellants, that the mother, Eliza Reyna, requested on February 6, 1947, that the Juvenile Court commit the said Elvira A. Reyna to the custody of the Convent of the Good Shepherd."

The agreed statement of facts was signed on behalf of the State by Assistant Criminal District Attorney W. Jay Johnson, who also signed the petition upon which the proceeding was based. This statement, after setting out the facts detailed in our original opinion, reads:

"These are the facts at the trial of Elvira Reyna, February 6th, 1947, as above stated, and also that Eliza Reyna, the mother of Elvira Reyna was present at said trial but did not testify at the trial and it is admitted that she does not speak nor understand the English language and Elvira was not represented by an attorney at the trial.

"Fourth: On the 27th day of February, A.D. 1947, at a regular session of said Court, functioning without any person present officially designated Clerk of said Court, the petition of Elvira Reyna, by and with her next friends Matias Reyna and his wife, Eliza Reyna, parents of Elvira Reyna, duly verified, was presented to the Honorable Charles W. Anderson, Judge of said Court, who after having heard said petition read and the argument of counsel for the petitioners, and after having heard the Honorable Eunice E. Whitaker, Assistant Probation Officer, and the Honorable W. Jay Johnson, Assistant Criminal District Attorney, reading from the records of the case showed that the mother of Elvira Reyna was present in Juvenile Court when Elvira was presented to the County Judge for hearing.

"Fifth: The Court immediately overruled said petition and order to reopen said cause, without further hearing or evidence being adduced, whereupon the attorney for the petitioners duly excepted to the ruling of the Court."

The concluding paragraph reads: "We agree that the above and foregoing two pages contain a full, true and correct statement of all the facts admitted in evidence by the court upon the trial of this cause, and we further agree that this record shall be filed as the statement of facts in this cause."

The statement not only does not disclose "that the trial court gave consideration to the case history on file in the office of the Probation Officer," but negatives the consideration of anything in the original hearing except the facts detailed in our original opinion, and the showing on hearing of the motion that the mother was in court at the original trial but did not testify (she was there under subpoena as a witness for the State), and it was admitted "that she does not speak nor understand the English language." There was no traverse of the verified petition to reopen the case. The order overruling it expressly refers to it as one "requesting said court to reopen said cause," and negatives any hearing other than that "the court having heard said petition read, and the argument of counsel." The record does not show that any case record existed in the probation office, nor (if there were such record) what it showed. It negatives the introduction or consideration, in the original trial and in the hearing of the petition to reopen, of any such record. Nor is there any suggestion anywhere in the record that the court had before it any evidence regarding fitness of the parents as custodians of the child. Nor is there any intimation in the record supporting the assertion in the motion that on February 6, 1947, the mother requested the judge to commit the child to the convent. The record affirmatively shows that the court declined to reopen the case upon the sole showing that the mother was present at the trial and did not testify.

We are asked in the face of this record to affirm the judgment under the presumption that the court had before it (and properly so) evidence warranting the judgment of delinquency and that the parents were not proper custodians of the child; also, that their rights were fully protected in the procedure shown by the record. Under such presumption the right

of review of the trial court's action would be of little if any value.

■ The suggestion in the motion that this court require supplemental findings of fact or an agreed statement of facts (there is already an agreed statement of facts in the record), would be tantamount to this court's doing what the petition to reopen requested and the trial court refused to do, —that is reopen the entire case. That is exactly the effect of our judgment remanding for a new trial on all issues. It may be conceded that in a proper case, at a proper time and under authorized procedure the statement of facts may be amended. See Rule 428, Texas Rules of Civil Procedure. No such case is presented here.

The motion is overruled.

Overruled.