## PETTIT v. ENGELKING et ux.

### No. 12563.

Court of Civil Appeals of Texas.
San Antonio.

June 30, 1953.

Rehearing Denied Sept. 2, 1953.

614

Robert D. Nogueira, Beeville, for appellant.

Reese D. Wade, Beeville, for appellees.

NORVELL and POPE, Justices.

Janice Fay Pettit, an infant approximately three and a half years old, was adjudged a neglected and dependent child within the provisions of Article 2330, Vernon's Ann.Civ.Stats., by the District Court of Bee County, acting in pursuance of a petition filed by Fred Engelking and his wife, Iva Engelking. Article 2331. The mother of the child, Virginia Pettit, has appealed to this Court.

It appears that two hearings were had in this case, and that evidence was adduced at both of them. In the order relating to the first hearing, held on December 17, 1952, it was recited that the court found the allegations in the petition were true and it was therefore ordered "that said child (Janice Fay) be, and is hereby adjudged a dependent child; that the parental rights of the parents of said child be, and the same are hereby terminated; that said child is hereby turned over to the care and custody of the said petitioners, who are able and willing to care for said child; that the care, custody and control of said child is by the Court transferred to said petitioners, and that said petitioners shall have the right to the custody of said child, *subject to the further orders of this Court,* and that said child shall become a ward of and subject to the guardianship of said petitioners."

On December 29th, Virginia Pettit filed a motion to reopen the case, hear further testimony, vacate the judgment theretofore rendered and restore the custody of the child to her. The court's action on this motion is disclosed by the recitations in the order disposing of the same, viz.:

"On this 2nd day of January, 1953, came on to be heard the motion and plea of Virginia Pettit, natural mother of Janice Fay Pettit, *for a reopening of the proceedings heretofore had in this cause for the purpose of introducing further evidence to show the Court said child is not a dependent and neglected child, which motion was granted;* and said motion further praying the judgment entered herein on the 17th day of December, 1952, be set aside, vacated and suspended and that the said Virginia Pettit have judgment that the custody of Janice Fay Pettit be restored to the said Virginia Pettit and for such other relief to which she, the said Virginia Pettit may be justly entitled.

"And the petitioner, Virginia Pettit, having appeared herein in person and by her attorney and the respondents, Fred Engelking and Iva Engelking, his wife, having appeared herein in person and by their attorney, and all parties having announced ready for trial on said motion; and the Court having heard the evidence offered by petitioner and respondents and having considered the same, *along with the evidence heretofore offered on the hearing herein on the 17th day of December, 1952,* and the Court having heard the argument of counsel, is of the opinion that said motion of the said Virginia Pettit for the vacating, setting aside and suspending of said judgment of the 17th day of December, 1952, and for the restoration of the custody of said Janice Fay Pettit to the said Virginia Pettit should be overruled and denied."

■ Appellees by a counter-point present the contention that this appeal is ineffective to review the order or judgment of December 17, 1952, because neither a motion for new trial nor a notice of appeal was filed within the time required by Rules 330(k) and 353, of the Texas Rules of Civil Procedure. The order of December 17th, insofar as it related to the matter of the custody of the child, was expressly made "subject to further orders of (the) Court." This is in accordance with applicable statutory provisions. Articles 2335, 2336 and 2337. The trial court had authority under a proper factual situation to change its orders relating to the custody of the child at any time. But appellees insist, before an order changing custody could be properly entered, a "change of conditions" must be shown to have occurred between December 17th and January 2nd. They cite the case of Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188, which is based upon the principle of res judicata. The trial court in this case did not proceed under this doctrine but, on the contrary, considered the evidence adduced upon both hearings. His granting of the motion reopening the case for the receipt of additional evidence "to show the Court said child is not a dependent and neglected child," deprived the judgment of the requisite finality to support a plea of res judicata. 26 Tex.Jur. 76, Judgments, §§ 383, 384. The issue before the trial court at the hearing of January 2nd was whether Mr. and Mrs. Engelking or Virginia Pettit should have custody of the minor, Janice Fay Pettit. That was the issue decided by the trial court and is

the issue which must be reviewed by us. In so doing, we must do as the trial court did, that is, consider the evidence offered by the parties on January 2nd, "along with the evidence heretofore offered on the hearing hereon on the 17th day of December, 1952."

While it has been held that an adjudication of dependency of a child does not necessarily deprive parents of their custodial rights, Nelson v. Clifton, Tex. Civ.App., 202 S.W.2d 471, and the custody of the child here involved could be awarded to the natural mother without disturbing the finding of dependency, we nevertheless consider the present appeal as effective in attacking the judgment of December 17th. We hold that in a case of this kind an order of the court reopening the case for the receipt of further testimony entered within thirty days after the rendition of the judgment has the legal effect of setting aside the judgment and rendering it ineffective. There was no subsisting judgment in this case from the time the motion to hear additional evidence was granted until the judgment was re-instated by the entry of the court's order of January 2nd. This construction must be adopted if we are to determine the question of error from the standpoint of what the parties and the trial court actually did and intended to do in the trial court, rather than assume that two separate and entirely independent hearings took place in the face of the trial judge's recitation that on January 2nd he considered the testimony then introduced along with that theretofore heard on December 17th.

There is another reason why the construction above set out should be, and we think has been, in substance adopted in cases of this nature. Ofttimes, dependent and neglected child cases, because of the emergencies of the situation, must be handled and disposed of with dispatch. For this reason, it is not required that a citation be issued to a parent who lives outside the county where the dependent child proceedings take place. However, parental custodial rights come within the protection of the due process clauses of the federal and state constitutions. Fourteenth Amendment to the Constitution of the United States, Article 1, § 19, of the Constitution of Texas, Vernon's Ann.St. Consequently, the Supreme Court has held that "where the parents are without notice of the proceedings, they must be allowed a *full hearing* in a subsequent proceeding on the issue of whether sufficient facts existed as to authorize the entry of the judgment of dependency." DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 691. In cases of this kind the question of the fairness of the hearing is always present and has been jealously guarded by the courts. In Reyna v. State, Tex.Civ.App., 206 S.W. 2d 651, the judgment was reversed in a delinquent child case, Article 2338-1, Vernon's Ann.Tex.Stats., because the trial judge refused to consider a motion filed on behalf of the child by its mother some twenty days after the original judgment was rendered, despite the fact that the mother was present in court at the time of the original hearing. She had been served with a subpoena rather than a summons, and being unable to understand the English language she was unable to protect her rights or those of her child at the time of such hearing. See also Pena v. Snare, Tex.Civ.App., 196 S.W.2d 207.

In this case the evidence shows that at the time these proceedings were filed, Virginia Pettit was residing in Nueces County, where she was employed as a waitress; that she was divorced from her husband and that his whereabouts were unknown; that she was a native of Virginia and had recently moved to Texas; that she had no blood relatives in the State of Texas, and that her father, step-mother and other close relatives resided in Virginia. Although the statute did not require that she be served with citation, she received a notice on the 15th day of December, commanding her to appear in the Bee County courthouse for a hearing the next day, December 16th, and defend the charge that her daughter was a dependent and neglected child. (It should perhaps be said that the notice was issued on December 11th. The record does not show why it was not served until the 15th.) On December 17th the first hearing took place. On December 29th the motion

to reopen the case was made. From the statement of facts covering the second hearing, it appears that the primary purpose of such hearing was to receive the testimony of A. C. Netherton, the father of Virginia Pettit, who made the trip from Virginia to Texas to testify in his daughter's behalf. It likewise appears that his evidence was vital to her case. The trial judge may have well considered that it would have essentially amounted to a denial of a fair trial to refuse to reopen the case and consider this testimony. However that might be, he reopened the case, considered *all* the testimony and then rendered his decision. We need not determine whether or not the refusal to reopen the case would have constituted such a departure from the pattern of essential fairness in a case of this kind as to amount to a denial of due process, for the reason that the court did not so refuse. He considered the various phases of this proceeding as constituting a unit, and we should review his action from that standpoint.

We accordingly overrule appellees' first counterpoint and pass to a consideration of appellant's contention that the evidence does not support the finding that Janice Fay was a dependent child and that the court erred in failing to award the custody of said child to the appellant. It appears that on February 1, 1948, Virginia Netherton married M. C. Pettit, who had a brother, Aaron Pettit, and two sisters, Mrs. Fred (Iva) Engelking and Mrs. Joshua Mann. This marriage took place in Winchester, Virginia. At the time, Virginia Netherton had a daughter named Gladys Virginia. On August 7, 1949, Janice Fay, the subject of this litigation, was born. In January of 1952, M. C. Pettit moved with his wife and the two children to Beeville, Texas, where he had formerly resided. Shortly after this removal to Texas, marital difficulties arose between the husband and wife. There is evidence that Pettit took to drink, led an unstable life during the first six months of the year 1952, and failed to provide for either his wife or the children. As a result, Virginia Pettit separated from her husband in June and ultimately secured a divorce in November.

The whereabouts of M. C. Pettit was unknown at the time of the trial.

Practically all of the evidence tending to show that Janice Fay was a neglected child relates to the period of time from January to June of 1952. Mrs. Engelking testified that during this period she took charge of the children at frequent intervals and that Janice Fay was dirty, improperly clothed and sick. Joshua Mann testified that during the month of May M. C. Pettit and Virginia Pettit were living in a one-room tourist court with the children, and that "they were cooking and eating in the same room. The accommodations were bad, the children were ragged, dirty and ill kept. My heart went out for the two children, for the manner in which they were being reared and because of the neglect of their parents."

Shortly after the time Virginia Pettit separated from her husband, she agreed that Aaron Pettit and his wife might adopt Janice Fay, and consented to the adoption of the older child, Gladys Virginia, by Joshua Mann and his wife. Aaron Pettit lived in Victoria and in November, Joshua Mann, a member of the Air Forces, was transferred from Alabama, where he was then stationed, to Foster Field, near Victoria, Texas. About November 21st, Aaron Pettit and his wife returned Janice Fay to her mother, Virginia Pettit. There is conflict in the testimony as to the reason for this action. Mrs. Engelking stated that the Aaron Pettits did not wish to rear Janice Fay in a different home but in the same town with her sister, Gladys Virginia. Mrs. Aaron Pettit said that Virginia Pettit desired to have the child returned and that she acquiesced in the desires of the mother. Upon receiving the child from the Aaron Pettits, Virginia Pettit delivered the child to Mrs. Engelking, and again there is conflict of testimony. Mrs. Engelking's version was that although Virginia Pettit signed no written instrument to that effect, she agreed that Mrs. Engelking might keep the child permanently. Virginia Pettit, on the other hand, asserted that the arrangement was temporary; that she communicated with her father and received the money to return to Virginia around the first of

December, and would have done so except for Mrs. Engelking's refusal to let her have Janice Fay and the filing of the suit on December 11th.

As above stated, the motion for the receiving of additional evidence was made primarily for the purpose of hearing the testimony of A. C. Netherton, the father of Virginia Pettit. He testified that he lived in Winchester, Virginia, where he had been employed by the Virginia Woolen Company since 1933; that he owned five acres of land and a seven-room house situated thereon; that Virginia's mother died in 1945, but that he married again in 1950, and that he and his present wife desired to provide a home for Virginia Pettit and her child.

Virginia Pettit testified that at the time she separated from her husband, she decided to give up the children because of pressing financial difficulties; that she did not write to her father at the time as she did not wish to burden him with her troubles, but that she did communicate with him in December, explained her difficulties and ascertained that her father desired that she return home and make her home with him.

■ From the evidence, we do not believe it can be said that the home of A. C. Netherton would not be a suitable place for the rearing of the child. The same is true as to the home of Mr. and Mrs. Engelking, and the trial judge impliedly held that they were fit persons to have custody of the child.

■ The trial judge was the sole judge of the credibility of the witnesses and particularly in a case of this kind, great deference must be paid to his considered judgment, as he has actually heard the witnesses and observed the demeanor of the parties. DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687. However, we are constrained to differ with the trial judge, not upon a question of credibility of witnesses, but as to the legal effect of certain testimony. Sutter v. Yutz, Tex.Civ.App., 223 S.W.2d 554. The issue in this case is whether or not Janice Fay Pettit was a dependent and neglected child. The burden of proof rested upon the parties filing the application

under Article 2331. It is often stated in cases of this nature that one of the controlling factors of decision is the best interest of the child. This rule cannot, however, be expanded into a doctrine which would allow a child to be taken from its parents upon a showing that those filing an application seeking to have the child declared dependent are better able to furnish the child with pecuniary or material advantages. By the rule, it was not "intended that the poor should beget children and the rich should rear them." Cormack v. Marshall, 122 Ill.App. 208. While parents do not have property rights in children, they do, nevertheless, possess certain custodial rights which are recognized by the law and will be enforced accordingly. Parental rights may be given up by consenting to the adoption of the child. Article 46a, § 6, Vernon's Ann.Civ.Stats., or they may be lost by misfeasance, neglect or abandonment. 39 Am.Jur. 617, Parent and Child, § 27. Such result may be declared by a judgment rendered under the statute relating to dependent and neglected children. Article 2337. These matters are fully discussed in the case of Dewitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, heretofore referred to, and need not be repeated here, other than to point out that Articles 2330 et seq. constitute, in a sense, legislation applicable to emergency situations. A small child's needs must be met or it will perish. Adoption proceedings often follow as an adjunct, but a child may not be declared a dependent and neglected child for the sole purpose of facilitating adoption proceedings. The child must in fact be dependent and neglected at the time the proceedings are instituted or in imminent danger of so becoming in the immediate future. None of the authorities relied upon by appellee, such as DeWitt v. Brooks, supra; Nelson v. Clifton, Tex.Civ.App., 202 S.W.2d 471, and Mitchell v. Davis, Tex.Civ. App., 205 S.W.2d 812, contradicts this rule. This is not a case wherein the parent has abandoned the child and left it dependent upon the public for support. Although Virginia Pettit agreed that the Aaron Pettits might adopt the child, she received it back from them and, regardless of which

version of events occurring between November 21st and December 10th be accepted, there is no warrant for saying that an "abandonment" took place during this period.

All of the evidence tending to show that the child was dependent and neglected relates to the first six months of 1952, when the appellant was attempting to live with a drunken and dissolute husband. We may assume that during this period, had proceedings been instituted, a court of competent jurisdiction could have properly found that the child was a dependent and neglected child within the meaning of the statute. However, this state of affairs did not continue. Virginia Pettit acted to alter the situation and effected a change therein. She left her husband and sought to provide for the future of her children by giving them up and agreeing to their adoption by the Manns and the Aaron Pettits. Undoubtedly that was not a happy solution from her standpoint, but there is no evidence that Janice Fay was neglected while in the custody of the Aaron Pettits, other than the slight and wholly insufficient inference that might be drawn from Mrs. Engelking's statement that the child had only one dress when it was subsequently turned over to her. It can not be said that the child was neglected when in the custody of Mrs. Engelking, after it had been delivered to her during the latter part of November. The facts in this case differ from those disclosed by the report of De-Witt v. Brooks, supra, for there legal action was taken while the child was neglected and not some time later, after steps had been taken to remedy the situation.

If it be taken as true that Virginia Pettit, as well as her husband, was guilty of neglect of her child during the first part of 1952, that neglect can not be made the basis of the decree rendered in December of that year. Neither can such neglect (if we assume that it existed), coupled with the testimony relative to the incidents between November 21st and December 10th, form the basis of a conclusion that the child on the latter date was in imminent danger of becoming a dependent and neglected child within the immediate future. The fact that at some time in the past a parent had been guilty of child neglect or misconduct is not sufficient in itself to deprive the parent of custody of the child, where there is nothing to show that the parent is not presently a fit and capable custodian for the child. Babington v. Crocheron (Re Crocheron's Estate), 16 Idaho 441, 101 P. 741, 33 L.R.A.,N.S., 868; Wilson v. Mitchell, 48 Colo. 454, 111 P. 21, 30 L.R.A.,N.S., 507; 39 Am.Jur. 616, Parent and Child, § 616.

For the reasons stated, we hold that the judgment of the court below is without support in the evidence. Appellant's point so asserting is sustained, and the judgment declaring Janice Fay Pettit to be a dependent child is accordingly reversed and vacated, and the custody shall remain with and is hereby awarded to appellant, Virginia Pettit.

In accordance with what has been said in the fore-part of this opinion, it should perhaps again be pointed out that if we be in error in treating the proceedings below as a unit and are without jurisdiction to disturb the finding of December 17th that Janice Fay was a neglected child; nevertheless, the trial court on January 2, 1953, had, and consequently this Court has, authority to award the custody of the child to its mother, Virginia Pettit. Rule 434, Texas Rules of Civil Procedure.

POPE, J., concurs.

W. O. MURRAY, Chief Justice (dissenting).

It is my opinion this cause should be dismissed for want of jurisdiction and I therefore dissent from the majority opinion.

The final judgment herein was rendered on December 17, 1952, and no motion for a new trial was filed within the ten-day period allowed by Rule 330(k), T.R.C.P., nor was notice of appeal given within this ten-day period, as is required by Rule 353, T.R.C.P. Thus, upon December 27, 1952, appellant had lost her right to appeal from the only final judgment ever entered in this cause. The question then arises, is there anything that a party may do thereafter to breathe the breath of life back into a

dead appeal and thereby secure a review of such final judgment in an appellate court? Of course, the trial judge had the power for thirty days after December 17, 1952, to set aside his final judgment, or to have modified it, but this he refused to do. Rule 330(*l*), T.R.C.P. Appellant herein has taken certain action in this cause and the inquiry here is, has she thereby retrieved her lost right to an appeal?

A motion styled "Motion and Plea to Reopen for Further Evidence," was filed on December 29, 1952, or twelve days after the final judgment was rendered. The trial court heard evidence on January 2, 1953, and entered an order reciting that he was considering the evidence heard at that time, as well as that heard on December 17, 1952, and then refused to vacate, set aside or suspend the original judgment. This last order was not a final judgment, nor an order overruling a motion for a new trial, and therefore the notice of appeal given after this order came too late.

If the order entered on January 2, 1953, be regarded as a second final judgment in the case it would be a nullity because the first judgment was not vacated, set aside, suspended or modified. Rule 301, T.R.C.P; Black on Judgments, Vol. 1, par. 304, p. 380; Whatley v. King, Tex.Civ.App., 245 S.W.2d 337, 339, reversed on other grounds, Tex.Civ.App., 249 S.W.2d 57; Bridgman v. Moore, 143 Tex. 250, 183 S.W.2d 705; Stolpher v. Bowen Motor Coaches, Tex. Civ.App., 190 S.W.2d 376; Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83; Kibby v. Leon, Tex.Civ.App., 241 S.W. 1064; Cooksey v. Jordan, 104 Tex. 618, 143 S.W. 141.

In Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83, 84, the Court said:

"The Court of Civil Appeals correctly states that the rule is well settled that the entry of a second judgment in the same case is not a vacation of the first, and that if there is nothing to show the first was vacated, the second is a nullity. See authorities cited in the opinion in support of the statement, 127 S.W.2d [559] 561, 562."

The order entered on January 2, 1953, cannot be regarded as an order overruling a motion for a new trial because no motion for a new trial was filed within the ten-day period allowed by Rule 330(k), T.R. C.P. The filing of a motion for a new trial after the ten-day period is a nullity. In A. F. Jones & Sons v. Republic Supply Co., Tex.Sup., 246 S.W.2d 853, 855, the Supreme Court of this State, speaking through Mr. Justice Smith, had this to say:

"The trial court certainly could not, on its own initiative, make any effective order affirming its former judgment and thereby extend the period for perfecting an appeal. The trial court's inherent power resides only in the right of altering its former judgment and since it does not have the power on its own initiative to extend the period for appellate procedure, neither does it have the power to grant leave to file and then overrule a tardy motion for new trial, which, in effect and in actuality, goes beyond its inherent jurisdiction and beyond the scope of Rule 320 and Rule 5." See also Gage v. Dallas Power & Light Co., Tex.Civ.App., 241 S.W.2d 196; Reynolds v. Dallas County, 146 Tex. 372, 207 S.W.2d 362.

Notice of appeal in this case was not given until January 5, 1953, some nineteen days after final judgment had been rendered and therefore came too late to give this Court jurisdiction of this cause. Rule 353, T.R.C.P; 3A Tex.Jur. 290, § 224; Howe v. Howe, Tex.Civ.App., 223 S.W.2d 944; Cox v. Payne, Tex.Civ.App., 231 S.W.2d 957; Hickman v. Rusk State Hospital, Tex.Civ.App., 242 S.W.2d 913; Backus v. Roper, Tex.Civ.App., 195 S.W.2d 261; Lyell v. Guadaloupe County, 28 Tex. 57; Wright v. Wright, Tex.Civ.App., 101 S.W. 2d 655; Richey v. Central Securities Co., Tex.Civ.App., 131 S.W.2d 121; Kirby v. South Texas National Bank of San Antonio, Tex.Civ.App., 127 S.W.2d 955.

The giving or filing of notice of appeal within the ten-day period required by Rule 353, supra, is mandatory and jurisdictional and cannot be waived even by the adverse party. Grant v. Hughes, Tex.Civ.App., 198 S.W.2d 630.

Another reason we do not have jurisdiction of this case is that the record was not tendered to the Clerk of this Court within the sixty-day period allowed by Rule 386, T.R.C.P., nor was any motion for an enlargement of time for the filing of such record made in this Court. Compliance with the provisions of Rule 386, supra, is also mandatory and jurisdictional.

The motion filed by appellant to "Reopen for Further Evidence" contained none of the usual and necessary allegations of a "Bill of Review" and cannot be regarded as such. Backus v. Roper, Tex.Civ.App., 195 S.W.2d 261.

The cause should be dismissed for want of jurisdiction.