Alfredo A. MORAN et al., Appellants,

v.

Manuel DE LLANO et ux., Appellees.

No. 13429.

Court of Civil Appeals of Texas.

San Antonio.

March 18, 1959.

Rehearing Denied April 12, 1959.

Richard G. Morales, Laredo, Arthur Mitchell, Austin, for appellants.

Horace C. Hall, Laredo, Bobbitt, Brite & Bobbitt, San Antonio, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Manuel De Llano and Inez De Llano, maternal grandparents of Sandra Judith Moran, a minor, born May 26, 1956, against Alfredo A. Moran, father of Sandra Judith Moran, and Aurelio Moran and Teodora Trevino de Moran, the paternal grandparents of the minor, seeking a writ of habeas corpus requiring the defendants to produce the child in court and after hearing have her custody awarded to them.

The cause was called for trial on February 19, 1958, at which trial the defendants other than the father, who was confined in a hospital, appeared and asked for a continuance, which request was granted, but, pending a further hearing, the court awarded the temporary care, custody and control of Sandra to her maternal grandparents, the plaintiffs herein. The mother of Sandra, Inez A. De Llano Moran, was killed in an automobile and freight train collision in the early hours of January 1, 1958. The automobile was being driven at the time by Alfredo A. Moran, the husband of Inez and the father of Sandra, who was himself seriously injured in the collision.

A final hearing of the cause was begun on March 12, 1958, and after hearing much testimony the matter was taken under advisement by the trial court, at the request of attorneys, so that written briefs might be furnished by the attorneys and considered by the court. Thereafter, on August 1, 1958, judgment was rendered finding that Alfredo A. Moran, the father of Sandra, is not a fit person to have the care, custody and control of his daughter, Sandra, and that Manuel De Llano and Inez de la Garza De Llano, the maternal grandparents of Sandra, are fit persons to have the care, custody and control of said child.

The decree awards the permanent care, custody and control of Sandra to her maternal grandparents without any provision for the right of visitation of her father, from which judgment Alfredo A. Moran and his parents have prosecuted this appeal.

The trial court made findings of fact and conclusions of law at the request of appellants. Concerning the fitness of the father to have the custody and control of Sandra, the court found as follows:

"1. That Respondent Alfredo A. Moran was born in Laredo, Texas, on August 7, 1935, was twenty years old when he married the deceased mother of the child, and was twenty-two years old at the time this proceeding was instituted.

"2. That in offering to provide a home environment for his child, Alfredo A. Moran is dependent on the gratuity and sufferance of his own father and mother;

"3. That in his manifested plans to finish his education (which he left incomplete because he quit Texas A & M College after the first semester because he 'just did not like military life'), he is also dependent on the gratuity and sufferance of his father and mother;

"4. That in his present means of support he is totally dependent on the gratuity and good-will of his father; and in his future means of support he is to a large extent dependent on the gratuity and good-will of his father;

"5. That while he is possessed of valuable personal attributes such as personality, sociability and good fellowship, he has not reached and lacks that degree of maturity necessary to undertake the duties, fulfill the obligations and discharge the responsibilities of the head of a family with a fair chance of success;

"6. That he lacks that degree of prudence whereby the head of a family budgets and limits his own personal recreational expenses in order adequately to provide for those dependent upon him;

"7. That he is intemperate, or at least has a weak character unable to resist the excessive use of intoxicating liquors when the occasion arises;

"8. That while a number of witnesses consider him a good worker and possessed of good working habits, his job has been always under the personal supervision of his father and he has yet to show such good working habits on his own;

"9. That he has an inherent or developed tendency, or a weakness to let things ride along, in depending upon others (his in-laws, his father, his brother), or receiving from them pecuniary and material assistance for his personal and family needs;

"10. That while the tragic death of his wife may have created an overbearing yearning and longing for the surviving child, it is doubtful, judging by his pattern of behavior prior to the tragedy, whether such feelings will remain at such peak so that his own personal wants and desires be subrogated to the needs and wants of the child during these crucial years of its life;

"11. That while his own near-death experience in the accident may have shocked him into a sense of reality as to his own future and that of his child, his plans for the future are hazy and wishful, and to a large extent dependent on his employer (to change working hours so to spend more time with the child) and on his father (for material and financial assistance to finish his education, provide home, loans, job);

"12. That while at this time he manifests no plans to marry, if he does not marry he remains dependent upon his father and mother to provide a home environment for the child; and if he does marry, a new home environment is ahead for the child with all its inherent risks and uncertainties;

"13. That a young man of 23 is totally unsuitable to rear, care for and minister to the needs and wants of a female child of tender years."

Other findings were made which pertain to the relative fitness of the paternal grandparents and the maternal grandparents of Sandra to have her care, custody and control.

The findings of fact made by the trial court do not support a judgment taking from the natural father the care, custody and control of his two-year-old daughter and awarding the same to the child's maternal grandparents.

It is well settled law that where the mother is deceased the father becomes the natural guardian of his child, and he is entitled to its care, custody and control, unless he is an unfit person to have such responsibility, or unless he has relinquished his parental rights by giving the care and custody of his child to another for a long period of time during the tender and formative years of the child's life. 31 Tex. Jur. 1285, § 10; Mecke v. Grubbs, Tex.Civ. App., 278 S.W.2d 404; Thomas v. Thomas, Tex.Civ.App., 228 S.W.2d 548; Silva v. Aranda, Tex.Civ.App., 223 S.W.2d 333; Ochotorena v. Galarza, Tex.Civ.App., 210 S.W.2d 473.

The mother having died, the maternal grandparents seeking custody of the child on the grounds of unfitness of the father, had the burden of establishing by a preponderance of the evidence that his prima facie right to custody had been overturned. Mecke v. Grubbs, supra; Jones v. Gay, Tex.Civ.App., 258 S.W.2d 403.

The fact that at some time in the past a parent had been guilty of child neglect or misconduct is not sufficient in itself to deprive the parent of custody of his child, where there is nothing to show that the parent is not presently a fit, and capable custodian of the child. Pettit v.

Engelking, Tex.Civ.App., 260 S.W.2d 613, 619.

The findings of the trial court were insufficient to show that at the time of the trial the father was an unfit person to have the custody, care and control of his child.

It is true that the father of Sandra is not yet fully recovered from the injuries he received at the time of his wife's death, and would at the present time be compelled to rely upon his own mother and father to furnish Sandra a home. It is further true that he is unable to work and has no income, such as he had before he was injured, and while his mother and father are not nearly as well prepared to care for Sandra as are the appellees, nevertheless, this is no reason for taking the child from her father and permanently awarding its custody to appellees. The father is a young man, twenty-three years of age; he possesses personality, sociability and good fellowship; he does not know whether he will remarry or not, and while his plans are not clear, he is considering returning to college for the purpose of finishing his education. He has in the past been inclined "to let things ride along." He has spent too much money upon himself and not enough upon his family, but now he is taking a more serious outlook on life. He was greatly shocked by the untimely death of his wife and by his own serious injuries. At the present time he has a yearning and longing for his child. In the past he has been a social drinker of liquor and has shown a weakness for such drinking, and the trial court expresses a fear that later he will return to his bad habits. Such fear for the future does not justify the action of the trial court.

█ Appellees present the contention that by permitting them to care for his child for a long period of time Alfredo has abandoned his right to the custody of Sandra. The record shows that after the marriage of Alfredo and Inez; appellees furnished them an apartment in the back-

yard of their home, and that Mrs. De Llano assisted her daughter at all times in the care of the baby, taking care of it in the daytime, while her daughter went back to school for a while and at another time while Inez worked. On the night of Inez' death the parents had left the child with the appellees, while they attended a New Year's eve party at which there was much drinking, and it was while returning from this party that Inez was killed and Alfredo seriously injured. The appellees continued to care for the child while Alfredo was recovering from his injuries. Alfredo agreed to this, but when appellees attempted to get him to sign a contract that they might adopt his child he objected and refused to do so. It is true that appellees can furnish a much better home for the child than can appellants at the present time, but this does not justify taking the child away from its father and giving its exclusive care and control to its maternal grandparents.

In State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, 903, the Supreme Court of this State quoted with approval the following statement from State ex rel. Herrick v. Richardson, 40 N.H. 272, 275:

"The discretion to be exercised is not an arbitrary one, but, in the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his infant child, which no court is at liberty to disregard. And, while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided, until it is made plainly to appear that the father is no longer worthy of the trust. The breaking of the ties which bind the father and the child can never be justified without the most solid and substantial reasons. Upon the father the child must mainly depend for support, education, and advancement in life; and as security for this he has the obligation

of law, as well as the promptings of that parental affection which rarely fails to bring into the service of the child the best energies and the most thoughtful care of the father. In any form of proceeding, the sundering of these ties will always be approached by the courts with great caution, and with a deep sense of responsibility."

Under all the facts and circumstances in this case, the trial court abused his discretion in taking from this father his only child and awarding its permanent custody to the appellees.

The judgment is reversed and judgment here rendered awarding the care, custody and control of Sandra Judith Moran to her father, Alfredo A. Moran.