**Francis McLEAN, Appellant,**

**v.**

**Dorothy LEWIS, Appellee.**

**No. 16304.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 7, 1964.

Rehearing Denied Feb. 28, 1964.

———◆———

Burt Barr, Dallas, for appellant.

Joann Peters, Dallas, for appellee.

BATEMAN, Justice.

Habeas corpus proceedings. The sole question involved is the right to custody, possession and control of a three-year old boy, Francis McLean, Jr. The writ was granted and custody awarded to appellee, Dorothy Lewis. The appellant, Francis McLean, presents six points of error on appeal.

It is undisputed that the parties, though never married to each other, are the natural parents of the child, and that about three months after the child's birth the father, appellant here, filed in the Juvenile Court of Dallas County his petition for adoption of the child. The judgment of adoption made no specific disposition of the matter of custody.

At the time of the adoption appellee and the child were living on premises owned and occupied also by appellant, although apparently in separate houses. Later, on request of appellant, she left those premises and took the child with her, her right to do

so not being challenged or disputed in any way by appellant. Several times thereafter the appellee, who had a serious drinking problem, became intoxicated and, realizing she was becoming incapable of giving the small child proper parental care, sent word to appellant who took possession of the child and kept him in his home until appellee regained sobriety and requested the return of the child to her. This request was complied with each time until the last, when it developed that appellant had placed the child in a Catholic orphanage in Fort Worth, Texas and refused to authorize its return to appellee. This habeas corpus proceeding was then instituted by her in the same court which had granted appellant's petition for adoption.

The material portions of Sections 7 and 9 of Art. 46a, Vernon's Ann.Tex.St., which was the adoption statute then and now in effect, should be noted here as follows:

"Sec. 7. Nothing in this Act shall prevent a Court of Competent Jurisdiction. from taking away from such adoptive parent the custody of the adopted child and awarding the same to its natural parents, or either of them or to any other person, upon proof of the bad moral character of such adoptive parent, or upon proof of abuse, neglect or ill treatment of such adopted child by the adoptive parent."

"Sec. 9. When a minor child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease and determine, and such child shall thereafter be deemed and held to be *for every purpose* the child of its parent or parents by adoption as fully as though naturally born to them in lawful wedlock. Said * * * parent or parents by adoption shall be entitled to the services, wages, control, *custody and company of said adopted child,* all as if said child were their own natural child." (Italics ours.)

By his first, second, fifth and sixth points of error on appeal appellant contends that he has a valid judgment of adoption entitling him to the legal custody of the child, and that the granting of the writ of habeas corpus was a collateral attack on that judgment and therefore erroneous. He relies on the above quoted portions of Sec. 9, Art. 46a, V.A.T.S.

While it is true that appellee does not attack the validity of the judgment of adoption, she does take the position that the evidence introduced is sufficient to bring the case within Section 7 of Art. 46a, V.A.T.S. and justify the trial court in taking the custody of the child from the appellant and awarding it to her. In the light of the record as a whole, we are unable to say that the trial judge abused his discretion in doing so.

The time-honored maxim, "The rights and welfare of the children are the paramount things to be considered in adoption and child custody cases," announced by our Supreme Court in Davis v. Collins, 147 Tex. 418, 216 S.W.2d 807, 811, and reiterated many times, should apply here. The writ of habeas corpus has come to be recognized as a proper form of procedure for litigating the matter of proper custody of children and ascertaining how best to secure their welfare as well as to protect society. The application invokes the equity jurisdiction of the court; the trial judge sits as a chancellor vested with broad equitable powers, and the rules regulating the exercise thereof should always be liberally construed. "He should hear all legitimate testimony bearing upon the question, unhampered by narrow technical rules." Tunnell v. Reeves (Tex.Com.App.), 35 S.W.2d 707, 710. The trial judge here had the right and duty, under all of the facts and circumstances of the case, to resolve the question as he did, and we have no authority to substitute our judgment for his in the absence of an abuse of discretion. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d

787; Wade v. Shaughnessy, Tex.Civ.App., 231 S.W.2d 494, err. ref.

By his third point of error appellant asserts that the granting of the writ of habeas corpus was error because appellee failed to plead or prove that appellant was of bad moral character or that he abused or neglected or ill treated the child. It is true that no such specific allegation is contained in her pleading. However, evidence was introduced, including statements by appellant himself, bearing on his moral character and his treatment of the child, which evidence is hereinafter summarized. No objection was made to this testimony on the ground that it was not supported by pleading, or on any other ground. As heretofore indicated, the general rule in this state is that technical rules of pleading and practice need not be strictly followed in child custody cases, because the best interests and welfare of the child are paramount. Hendrick v. Voss, Tex.Civ. App., 334 S.W.2d 308, 314, no wr. hist. "It seems to us that the welfare of the minor child should rise above the technical rules of pleadings as well as the technical rules of evidence." Sparks v. Gandy, Tex. Civ.App., 213 S.W.2d 559, 561, no wr. hist. Accordingly we hold that the issue was tried by implied consent and overrule the third point. Rule 67, Texas Rules of Civil Procedure; Lolley v. Lolley, Tex.Civ.App., 181 S.W.2d 941, err. dism.; Lacy v. Hitzeman, Tex.Civ.App., 190 S.W.2d 764.

Appellant's fourth point of error complains that it was not shown that depriving him of custody would benefit the child. We are quite impressed by the very commendable attitude of appellant toward this child—in recognizing him, paying his living expenses, formally adopting him and attempting within his limited capabilities to provide a suitable home for him. Nevertheless, our concern is primarily to determine whether the trial judge abused his discretion in his effort to serve the best interests of the child. The trial court evidently considered that the evidence touch-

ing appellant's character and his manner of caring for the child was sufficient to show one or more of the grounds specified in Section 7 of Art. 46a, V.A.T.S. It therefore becomes our duty to examine that evidence.

The evidence showed without dispute that appellant was a man sixty-one years of age who had never married, that he was admittedly an alcoholic (although he had not had a drink in about nineteen years), that he owned several hundred acres of valuable land near Carrollton, Texas on which he operated a recreation park, and on which was also situated his home wherein he kept from time to time a number of derelict alcoholics whom he hired to do the chores around the park and home. Appellant testified that he had been "going with" a certain girl for twelve or fourteen years, who worked for him as a cook until January 1963, when she quit. He first testified on cross examination that he slept with this girl, although he did not plan to marry her, that she was also an alcoholic and that while she was there and was sleeping with him he had the child in question on the premises, not in the bedroom with him but in a separate cottage; that this girl did not live in the house with him but in a separate cottage, and that the child did not ask him who she was. He later testified that he didn't actually sleep with this girl but did have "relations with her" from time to time.

Appellee admitted that she was also an alcoholic, although she had not had a drink in eighteen months. Both parties testified that an alcoholic is never cured, that no matter how long the urge or desire to drink may have been "arrested" he or she might again succumb to it at any time. She has been active in Alcoholics Anonymous and attends their meetings with some regularity. She had been married to one J. W. Lewis and was divorced from him in 1954. Living with her is also a daughter of that marriage, twelve years of age. She receives $40 a month from Lewis for her support. Appellee is employed by a life insurance company as a bookkeeper and receives $142 (after taxes) twice a month as salary, and occupies a duplex apartment for which she pays $90 per month.

Appellant testified that after appellee left his place with the child she became drunk six or eight times and on each occasion sent word for him to come and get the boy, and after she sobered up she asked for the boy's return, with which requests he complied because he "thought the proper place for the child was with his mother." He said he planned to leave the child in the orphanage until fall, then hire a young couple, who have a child of their own, to take care of him in a separate building on his place. He also testified that appellee sent him an obscene card through the mail; also that the boy in question used foul language on one occasion shortly after having been with his mother; and that appellee does not have "character as regards truth, honesty, ideals, strength of purpose, things of that sort."

A Catholic priest, called as a witness by appellant and examined chiefly by the court, testified that appellant regularly attended his parish church and contributed to its support. When asked his opinion as to whether or not appellant would make a good father to the child, he expressed some doubt because of appellant's age, the business he is in, and the company the youngster would be around all of the time. He also testified that he knew appellee, who had called him about baptizing the baby; that appellee had called him on numerous occasions when she was drinking and mentioned that she was trying to overcome it. He also said: "My opinion was it would be extremely difficult under present circumstances for that youngster to be given a proper home at Sandy Lake [appellant's home]. I say under present circumstances. I also feel that it would be very difficult to render a good judgment on my part regarding Mrs. Lewis." He also said that if he were to assume that appellee has been active in Alcoholics Anonymous, has abstained from the use of alcohol and was gainfully em-

ployed for a period of a year and a half, he would say that the law of averages would be in favor of the youngster being given a good home with her. He added that he thought the child would be better off in the Fort Worth orphanage than he would with either one of these parties.

There was thus some evidence to support the conclusion reached by the trial court, and there is nothing in the record before us to indicate that the court abused his discretion or "closed his eyes to the welfare and best interest of the" child involved. *Bell v. Hoskins*, Tex.Civ.App., 357 S.W.2d 585, 588, no wr. hist.; *Cuellar v. Flores*, Tex.Civ.App., 238 S.W.2d 991, no wr. hist.; *Gillespie v. Gillespie*, Tex.Civ.App., 343 S. W.2d 281, 284, err. ref. n. r. e. That being true we are constrained to overrule appellant's fourth point of error.

Finding no error requiring reversal, we affirm the judgment of the court below.

Affirmed.