**Herbert Dale ARNOLD et ux., Appellants,**

v.

**DALLAS COUNTY WELFARE UNIT,**
Appellee.

No. 5314.

Court of Civil Appeals of Texas, Waco.

March 14, 1974.

Tom Barr, Jr., and Burt Barr, Dallas, for appellants.

Joe B. Garza, Dallas, Gdn. ad Litem, appellee appointed atty. for child.

Henry Wade, Dist. Atty., John E. Rapier, and Paul W. Goodwin, Asst. Dist. Attys., Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by Herbert D. Arnold and wife, parents of Terry Dale Arnold, a minor, from judgment of the trial court,

**322**

declaring such minor a dependent and neglected child.

The Dallas County Child Welfare Unit filed this suit alleging the minor child "without proper parental care and in need of protection", and prayed the child be declared a dependent and neglected child. The trial court temporarily placed custody of the minor with the Dallas County Welfare Unit, and 13 months later after trial on the merits, on July 12, 1973 entered judgment declaring the minor a dependent and neglected child.

The parents appeal on 2 points contending:

1) The trial court erred in declaring the child a dependent and neglected child without any testimony, or without sufficient testimony showing that the child was a dependent and neglected child.

2) The trial court erred in not having the child in court during these proceedings.

The record reflects Terry is 10 years old; that he lived with his parents and two sisters ages 6 and 11; that the Arnolds own their home, a two bedroom 1 bath home; that Terry was hard to manage and had run away from home several times; that he ran away on May 7, 1972 and his Mother called the police; that he was found that day and returned to his parents; that the Dallas County Child Welfare Unit was called and sent Mrs. Simmons to talk with the Arnolds. Mrs. Simmons testified she went to the Arnold home on May 7, 1972; that Mrs. Arnold told her Terry was difficult to manage; that the Arnold home was unclean; that Terry had been tied to a bed with a coathanger; that Mrs. Arnold said she wanted help with Terry because he was a runaway; that the Arnolds agreed to a voluntary placement of Terry with the Welfare Unit. Mrs. Simmons further testified Terry was small for his age; his speech was disconnected; he had bruises on his legs; the home was chaotic; and that Terry's teeth were bad.

Policeman Cannon testified Mrs. Arnold had called the police department that Terry had run away; that he was found and returned home; that Mrs. Arnold told him she could not control the boy and wanted assistance with the boy.

Mrs. Nix a welfare worker testified she was on the Arnold case from May 1972 to February 1973; that she had many contacts with the Arnolds; that the Child Welfare Department placed Terry in a Foster Home; that the county paid to have Terry's teeth fixed; that the Arnold home had no "intellectual stimulation", "erratic emotional care", and "neglect to health problems". She testified she determined the Arnolds would not "improve the home"; that Terry improved in the Foster Home; and that the Arnolds were "two unfit parents".

Sgt. Adams of the Grand Prairie police department went to the Arnold home at the call of another policeman and saw Terry with leg bruises.

Mrs. Keller, a welfare worker testified she was assigned to the Arnold case in February 1973; that Terry was placed in a second foster home 4 days prior to trial.

Dr. Hedrick a dentist testified he found extensive decay in Terry's teeth; filled 6 teeth; and was paid by the Welfare Department.

Mrs. Arnold, Terry's mother testified Terry ran away from home several times including on May 7, 1972; that she called the police to help find Terry; that the police called Mrs. Simmons of the Welfare Department; that Mrs. Simmons came and promised if they could take Terry she would return him in a few days; that Terry had been making A's and B's in school; that she is 31; works only in the home; loves Terry and wants him back; that she had called Child Welfare and asked them to help her in keeping Terry from running away; that the Arnolds had paid child support on Terry during the time he was in Foster Homes.

Mrs. Clemmons of the Dallas County Juvenile Department, and an attorney who formerly represented the Arnolds in this matter testified the Arnolds were paying $20. per week support for Terry; that the Foster parents of Terry did not want the Arnolds to visit him; that Terry wanted to go home after visits of his parents; that the Arnolds have a good home, adequate food, and are fit parents.

Mr. Arnold the father testified he was 32, was a cement finisher, earns $5. per hour, or $180. per week, owns his home; that he tied the boy to the bed when he (the father) had a broken leg to prevent the boy from running away while the mother was not at home; that he wants Terry back; will do "anything" for the boy; loves the boy; the boy loves him; and will do anything to get him back; that he paid support every week he could; and was fixing to take Terry to the dentist just before the Welfare Department took him.

Mrs. Brown of Dallas Mental Health Center testified Terry was behind academically for his age and grade.

The child was not present at the trial. During trial appellants moved the case be continued until the child be produced in court, and thereafter made a second demand that the child be produced in court. The trial judge stated the child would be brought before the court at the appropriate time.

Article 2330 Vernon's Ann.Civ.Texas St. defines "dependent child" or "neglected child" as any child under 18 who is dependent upon the public for support, or who is destitute, homeless or abandoned, *or who has not proper parental care,* or who habitually begs or who is found living in a house of ill fame, or with any vicious or disreputable person, *or whose home by reason of neglect, cruelty or depravity on the part of the parents is an unfit place for such child,* or whose parents permit him to use intoxicating liquors.

The only portions of the statute having possible application here are *"or who has not proper parental care"*; and *"or whose home, by reason of neglect, cruelty, . . . on the part of it's parents . . . is an unfit place for such child".*

 The burden of proof is upon the Dallas County Child Welfare Unit, and before the drastic remedy of declaring a child dependent and neglected is applied, the unfitness of the parents should clearly appear from the evidence. Martin v. Cameron County Child Welfare Unit, Te⁓.Civ. App., NRE, 326 S.W.2d 31; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687; Sutter v. Yutz, Tex.Civ.App., er. dism. 223 S.W.2d 554; Pettit v. Engleking, Tex.Civ. App., NRE, 260 S.W.2d 613.

Appellants own their home; the father earns $180. per week; and while Terry has been in a foster home the parents have contributed to his support. There is no evidence the parents have not provided for their family, or that any member of the family is dependent on the public or others for support.

The evidence is that Terry was hard to manage and ran away from home. Appellants sought help to prevent his running away. There is evidence his teeth were bad and that he had bruises on his leg from being tied to a bed on one occasion. The Arnolds consented for the Welfare Unit to make temporary placement of Terry, and Mrs. Arnold testified the Welfare people promised to return the child in a short time. Appellants testified they love Terry and want him back.

 This evidence falls far short of that required to declare a child neglected and dependent; and is insufficient to support the finding and judgment. In fact we almost have a no evidence situation here. Point 1 is sustained as to the sufficiency of the evidence.

Article 2333 VATS provides upon a dependent and neglected child hearing the "child shall be brought before said court".

While this article is directory and not jurisdictional it is mandatory that the child be brought before the court at the instance of any party at interest. Kamleh v. Brown, Tex.Civ.App., NWH, 389 S.W.2d 513; Stubblefield v. Hampton, Tex.Civ. App., NWH, 295 S.W.2d 233. Point 2 is sustained.

On another trial unless the evidence is *materially* stronger for appellee, judgment should be rendered for appellants.

Reversed and remanded.